Per Curiam.
From beginning to end, judicial proceedings conducted for the purpose of deciding whether a defendant shall be put to death must be conducted with dignity and respect. The disturbing facts of this case raise serious questions concerning the conduct of the trial, and this petition raises a serious question about whether the Court of Appeals carefully reviewed those facts before addressing petitioner’s constitutional claims. We know that the Court of Appeals committed the same procedural error that we corrected in Cone v. Bell, 556 U. S. 449, 466-467 (2009). We do not know how the court would have ruled if it had the benefit of our decision in that case.
Petitioner Marcus Wellons was convicted in Georgia state court of rape and murder and sentenced to death. Although the trial looked typical, there were unusual events going on behind the scenes. Only after the trial did defense counsel *221 learn that there had been unreported ex parte contacts between the jury and the judge, that jurors and a bailiff had planned a reunion, and that “either during or immediately following the penalty phase, some jury members gave the trial judge chocolate shaped as male genitalia and the bailiff chocolate shaped as female breasts,” 554 F. 3d 923, 930 (CA11 2009). The judge had not reported any of this to the defense.
Neither Wellons nor any court has ascertained exactly what went on at this capital trial or what prompted such “gifts.” Wellons has repeatedly tried, in both state and federal court, to find out what occurred, but he has found himself caught in a procedural morass: He raised the issue on direct appeal but was constrained by the nonexistent record, and the State Supreme Court affirmed his conviction and sentence. Wellons v. State, 266 Ga. 77, 88, 463 S. E. 2d 868, 880 (1995). He sought state habeas relief and moved to develop evidence. But the court held that the matter had been decided on appeal and thus was res judicata. See 554 F. 3d, at 932. He raised the issue again in his federal habeas petition, seeking discovery and an evidentiary hearing. But the District Court “concluded that Wellons’s claims ... were procedurally barred, and accordingly denied his motion for an evidentiary hearing on these claims.” Id., at 933.[1] Before *222 the Eleventh Circuit, Wellons “argue[d] that the district court erred in denying his motions for discovery and an evidentiary hearing to develop his judge, juror, and bailiff misconduct claims because they are not procedurally barred.” Id., at 935. The court disagreed, holding that Wellons’ claims were procedurally barred. Ibid.
As our dissenting colleagues acknowledge, post, at 226-227 (opinion of Scalia, J.); post, at 229 (opinion of Alito, J.), the Eleventh Circuit’s holding was an error under Cone, 556 U. S., at 466-467. “When a state court declines to review the merits of a petitioner’s claim on the ground that it has done so already, it creates no bar to federal habeas review.” Id., at 466. Both dissenting opinions assume that “the issue on which Cone throws light does not affect the outcome” because “the Eleventh Circuit . .. also decided that petitioner was not entitled to habeas relief on the merits.” Post, at 227 (opinion of Scalia, J.). Having found a procedural bar, however, the Eleventh Circuit had no need to address whether petitioner was otherwise entitled to an evidentiary hearing and gave this question, at most, perfunctory consideration that may well have turned on the District Court’s finding of a procedural bar.
*223 Although Wellons appealed the denial of “his motions for discovery and an evidentiary hearing,” 554 F. 3d, at 935, the Eleventh Circuit did not purport to address the merits of that issue at all.[2] The court stated only that “[e]ven if we assume that Wellons’s misconduct claims are not procedurally barred, they do not entitle Wellons to habeas relief” Id., at 936 (emphasis added). This opaque statement appears to address only whether petitioner was entitled to ultimate relief in the form of a new trial, not whether petitioner’s allegations, combined with the facts he had learned, entitled him to the discovery and evidentiary hearing that he sought.
The Eleventh Circuit’s reasoning does not suggest otherwise. The court observed that Wellons’ claims of misconduct were “grounded in his speculation as to the meaning underlying the jurors’ chocolate ‘gifts’” and “the surmise attached to their passive receipt of these gifts.” Ibid. This statement likewise indicates only that on the existing record, habeas relief was inappropriate, not that an evidentiary hearing should be denied. After all, had there been discovery or an evidentiary hearing, Wellons may have been able to present more than “speculation” and “surmise.” The Eleventh Circuit also pointed to the state court’s decision on direct appeal, see id., at 937, and reviewed that decision “[i]n light of the evidence presented before the Georgia Supreme Court,” ibid. This, too, is typical of a court reviewing the denial of habeas relief, not the denial of discovery or an evidentiary hearing.[3]
*224 Moreover, even assuming that the Eleventh Circuit intended to address Wellons’ motions for discovery and an evidentiary hearing, we cannot be sure that its reasoning really was independent of the Cone error. The fact that his claims rested on “speculation” and “surmise” was due to the absence of a record, which was in part based on the Cone error. And as the Eleventh Circuit’s reasoning turned on “the evidence presented before the Georgia Supreme Court,” 554 F. 3d, at 937, there is serious doubt about whether it necessarily relied on the very holes in the record that Wellons was trying to fill.
*225 Our dissenting colleagues allege that the Court is “degrading] ... our traditional requirements for a GVR.” Post, at 228 (opinion of Scalia, J.); see post, at 232 (opinion of Alito, J.). But the standard for an order granting certiorari, vacating the judgment below, and remanding the ease (GVR) remains as it always has been: A GVR is appropriate when “intervening developments ... reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome” of the matter. Lawrence v. Chater, 516 U. S. 163, 167 (1996) (per curiam). As already discussed, there is, at least, a “reasonable probability,” ibid., that the denial of discovery and an evidentiary hearing rested in part on the Cone error. And in light of the unusual facts of the case, a “redetermination may determine the ultimate outcome,” 516 U. S., at 167; cf. Williams v. Taylor, 529 U. S. 420, 442 (2000) (holding that several “omissions as a whole disclose the need for an evidentiary hearing”); Smith v. Phillips, 455 U. S. 209, 215 (1982) (“This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias”). The Eleventh Circuit’s opinion is ambiguous in significant respects. It would be highly inappropriate to assume away that ambiguity in respondent’s favor. That is especially so in a case in which petitioner’s allegations and the unusual facts raise a serious question about the fairness of a capital trial.
Both dissenting opinions suggest that if there is a strong case for discovery and an evidentiary hearing, then the Court “should summarily reverse or set the case for argument.” Post, at 227 (opinion of Scalia, J.); see also post, at 232 (opinion of Alito, J.). But as we have explained, “a GVR order conserves the scarce resources of this Court,” “assists the court below by flagging a particular issue that it does not appear to have fully considered,” and “assists this Court by *226 procuring the benefit of the lower court’s insight before we rule on the merits.” Lawrence, supra, at 167.
Unlike Justice Scalia, post, at 228, we do not believe that a “self-respecting” court of appeals would or should respond to our remand order with a “summary reissuance” of essentially the same opinion, absent the procedural default discussion. To the contrary, in light of our decision in Cone, we assume the court will consider, on the merits, whether petitioner’s allegations, together with the undisputed facts, warrant discovery and an evidentiary hearing.
The petition for writ of certiorari to the United States Court of Appeals for the Eleventh Circuit and the motion of petitioner for leave to proceed in forma pauperis are granted. The judgment is vacated, and the case is remanded to the Eleventh Circuit for further consideration in light of Cone, 556 U. S., at 466-467.

It is so ordered.

 Although the District Court found most of petitioner’s claims to be proeedurally barred, it alternatively declined to permit an evidentiary hearing because Wellons did not have enough evidence of bias or misconduct. Justice Altto wrongly suggests that the District Court reached that conclusion by reviewing a proffer that Wellons' attorneys assembled by “contacting all but 1 of the jurors,” many of whom “spoke freely.” Post, at 230 (dissenting opinion). Even apart from the fact that these interviews were informal and unsworn, they shed almost no light on what had occurred. The juror who allegedly “gave the penis to the judge,” App. C to Pet. for Cert. 36, was “hostile and refused to talk,” id., at 37; one “refused to talk about the trial,” id., at 36; another “did not want to talk about the case,” id., at 37; and one “conferr[ed]” with his wife who then “slammed and bolted the door,” ibid. Of those jurors who were willing *222 to talk at all, one admitted to being “concerned that she might say something that would be used for a mistrial,” id., at 35, and none admitted to knowing how or why the jury selected its “gifts,” see id., at 35-37. (Implausibly, Justice Auto suggests that Wellons’ lawyers may not have asked how or why the jury selected its “gifts,” post, at 230-231, though he bases that speculation only on the fact that no questions appeared in the proffer of facts.) Rather, the jurors discussed other matters and did so in the briefest of terms. All told, “everything that Petitioner ... learned,” App. C to Pet. for Cert. 38, filled only a few sheets of paper, see id., at 35-37.
Moreover, the subjects that the jurors did discuss may very well support Wellons’ view that his trial was tainted by bias or misconduct. For example, one interviewee “was surprised” that a fellow juror had been allowed to serve on a capital trial, given that her sister had been murdered by a man after he completed serving a life sentence. Id., at 36.

 As Justice Auto explains at some length, see post, at 229-232, the District Court did discuss the merits of that issue, but the District Court’s analysis has little relevance on whether the Court of Appeals made an alternative holding or rather affirmed the District Court’s decision on the ground that petitioner’s claim was procedurally barred.

 Justice Auto asserts that the Eleventh Circuit “stated in unequivocal terms that its holding on the merits of petitioner’s claim was independent of its holding on the question of procedural default.” Post, at *224 229. But that does not address the question: The merits of what? The question whether to grant habeas relief or whether to permit discovery and an evidentiary hearing?
Contrary to our dissenting colleagues, post, at 281-232 (opinion of Auto, J.), we do not find it dispositive that the section of the Eleventh Circuit’s opinion about judge, juror, and bailiff misconduct began with a full page statement of the standard of review, which in turn included a sentence about the circumstances under which an evidentiary hearing is warranted. See 554 F. 3d, at 934-935. Immediately following the standard of review that Justice Auto quotes, the panel explained that “‘if the record ... precludes habeas relief, a district court is not required to hold an evidentiary hearing,”’ and that “the record reveals that [Wellons’] claims ... are procedurally barred.” Id., at 935.
Moreover, the allegedly “unequivocal” holding that Justice Auto quotes was preceded by a discussion of the deference owed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the “Georgia Supreme Court’s judgment as to the substance and effect of the ex parte communication.” Id., at 937. This is the classic formulation of a decision whether to grant habeas relief. Indeed, it would be bizarre if a federal court had to defer to state-court factual findings, made without any evidentiary record, in order to decide whether it could create an evidentiary record to decide whether the factual findings were erroneous. If that were the case, then almost no habeas petitioner could ever get an evidentiary hearing: So long as the state court found a fact that the petitioner was trying to disprove through the presentation of evidence, then there could be no hearing. AEDPA does not require such a crabbed and illogical approach to habeas procedures, and there is no reason to believe that the Eleventh Circuit thought otherwise.