[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 28, 2011
JOHN LEY
CLERK

No. 10-14921

_____

D.C. Docket No. 2:06-cv-00357-CEH-DNF

THOMAS LEE GUDINAS,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 28, 2011)

Before CARNES, HULL, AND MARTIN, Circuit Judges,

PER CURIAM:

Thomas Gudinas, a Florida prisoner on death row, appeals from the district court's denial of his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. This Court granted Gudinas a certificate of appealability on one issue: whether he received effective assistance of counsel at the penalty phase of his capital trial. After carefully reviewing the record and having the benefit of oral argument, we affirm the district court's denial of Gudinas's petition.

## I.  PROCEDURAL HISTORY

Gudinas was indicted on July 15, 1994, by a grand jury in Orange County, Florida for: one count of attempted burglary with an assault of Rachelle Smith (count I); one count of attempted sexual battery of Rachelle Smith (count II); two counts of sexual battery of Michelle McGrath (counts III and IV); and, one count of murder in the first degree of Michelle McGrath (count V). The jury trial commenced on May 1, 1995, before Belvin Perry, Jr., Circuit Judge.[1] The evidence at trial indicated that Gudinas attempted to break into Rachelle Smith's car and sexually assault her in a parking lot outside a nightclub in downtown Orlando around 2:00 a.m. on May 24, 1994. Smith managed to get away. But a short time later, Gudinas sexually assaulted and killed Michelle McGrath. McGrath's partially naked body was discovered in an alley near the parking lot

---

[1]  Judge Perry also presided over Gudinas's state postconviction proceedings.

2

where Gudinas had assaulted Smith. Overwhelming evidence pointed to Gudinas as McGrath's killer. Further, a medical examiner testified to evidence of a gruesome sexual assault and that McGrath died from a "brain hemorrhage resulting from blunt force injuries to the head," likely caused by a "stomping-type blow from a boot." Gudinas v. State, 693 So. 2d 953, 957 (Fla. 1997) (Gudinas I). The jury returned guilty verdicts on all counts. Id.

During the penalty phase, the state introduced evidence of Gudinas's prior felony convictions, including convictions for "burglary of an automobile; assault; theft; assault with intent to rape; indecent assault and battery; and assault and battery." Id. at 958. Gudinas presented testimony from his mother, sister, and two experts during the penalty phase. Id. at 958–59. Gudinas's mother, Karen Goldwaithe, testified that she had a difficult pregnancy and that Gudinas suffered from health problems as an infant. Id. at 958. She reported that Gudinas had difficulty controlling his temper from an early age and was first evaluated at six years of age. Id. Thereafter, Goldwaithe sought assistance from the Massachusetts Division of Youth Services (DYS) and Gudinas had 105 placements through that agency over the next several years. Id. It was repeatedly recommended that Gudinas receive long-term residential treatment, but he never got any. Id. Gudinas eventually obtained his GED, but only completed his formal

3

education to the fourth grade.  Id.  Finally, Goldwaithe testified that Gudinas began abusing drugs and alcohol at an early age.  Id.

Gudinas's sister, Michelle, testified about their father's physical abuse towards Gudinas, including for example, the father's intentionally burning Gudinas's hand on a stove and making him stand outside in his underwear holding a sign saying "I will not wet the bed."  693 So. 2d at 958.  Although Michelle denied ever having any sexual contact with Gudinas, the state called a police officer in rebuttal to testify that she had reported Gudinas once attempted to sexually assault her.  Id.

Gudinas also presented the testimony of a neuropsychologist, Dr. James Upson, and a physician and pharmacologist, Dr. James O'Brian.  Id. at 958–59.  Dr. Upson concluded that Gudinas was "seriously emotionally disturbed at the time of the murder."  Id. at 958.  Further, Dr. Upson testified that his psychological testing of Gudinas showed he had "strong underlying emotional deficiencies," was impulsive, and sexually confused.  Id.  According to Dr. O'Brian, Gudinas was unable to control his impulses in an unstructured environment.  Id.  Based upon Gudinas's self report of alcohol and marijuana intoxication in combination with his underlying psychological make up, Dr. Upson

4

concluded that Gudinas's ability to conform his conduct to the requirements of law was substantially impaired. Id. at 958–59.

The jury recommended a death sentence by a vote of ten to two, and the trial court imposed a death sentence. Id. The trial court found three aggravating circumstances, one statutory mitigating circumstance, and several non-statutory mitigating circumstances which it gave very little weight.[2]

The Florida Supreme Court affirmed Gudinas's convictions and sentences on direct appeal. Gudinas I, 693 So. 2d 953, 968. With respect to his death sentence, the Court rejected Gudinas's argument that the trial court should have

---

[2] The Florida Supreme Court summarized the trial court's findings regarding aggravating and mitigating circumstances as follows:

> The trial court found the following statutory aggravators: (1) the defendant had been convicted of a prior violent felony, section 921.141(5)(b), Fla.Stat. (1995); (2) the murder was committed during the commission of a sexual battery, section 921.141(5)(d); and (3) the murder was especially heinous, atrocious, or cruel, section 921.141(5)(h). The court found one statutory mitigator: the defendant committed the murder while under the influence of an extreme mental or emotional disturbance, section 921.141(6)(b). The court found the following nonstatutory mitigating factors and accorded them very little weight: (1) defendant had consumed cannabis and alcohol the evening of the homicide; (2) defendant had the capacity to be rehabilitated; (3) defendant's behavior at trial was acceptable; (4) defendant had an IQ of 85; (5) defendant was religious and believed in God; (6) defendant's father dressed as a transvestite; (7) defendant suffered from personality disorders; (8) defendant was developmentally impaired as a child; (9) defendant was a caring son to his mother; (10) defendant was an abused child; (11) defendant suffered from attention deficit disorder as a child; and (12) defendant was diagnosed as sexually disturbed as a child.

Gudinas I, 693 So. 2d at 959 n.7.

5

recognized his age of twenty at the time of the offense as mitigating. Id. at 967. The Supreme Court denied certiorari. Gudinas v. Florida, 552 U.S. 936, 118 S. Ct. 345 (1997).

Gudinas filed his first Fla. R. Crim. P. 3.850 motion on June 5, 1998, which he subsequently amended twice.[3] An evidentiary hearing was held on a limited number of claims, including Gudinas's assertion that he was denied the effective assistance of counsel during his penalty phase. The trial court denied all of Gudinas's claims in a detailed written order, finding that Gudinas failed to show either deficient performance or prejudice with respect to his penalty phase ineffective assistance of counsel claim.

Gudinas appealed the trial court's denial of postconviction relief and also filed a petition for writ of habeas corpus.[4] See Gudinas v. Florida, 816 So. 2d 1095, 1099 (Fla. 2002) (Gudinas II). After correctly identifying Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), as the relevant standard, the Florida Supreme Court carefully evaluated every aspect of Gudinas's penalty

---

[3] Gudinas subsequently filed a second state postconviction motion following the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 609, 122 S. Ct. 2428, 2443 (2002) (holding that a sentencing judge, sitting without a jury, may not find an aggravating circumstance necessary for the imposition of the death penalty). The constitutionality of Florida's death penalty scheme under Ring is beyond the scope of our certificate of appealability.

[4] The claims in Gudinas's state habeas petition, described in the District Court's Order are not relevant to the COA issue.

phase ineffective assistance of counsel claim, and concluded that Gudinas had not shown his counsel's performance was deficient or prejudicial. See id. at 1101–10.

Gudinas timely filed his federal petition on October 15, 2002, which he subsequently amended. After briefing by the parties, the District Court entered a detailed 141-page order denying all of Gudinas's claims. The District Court correctly identified the applicable law from AEDPA and Strickland and carefully analyzed each of Gudinas's claims. With respect to Gudinas's ineffective assistance of penalty phase counsel, the District Court concluded:

> Based upon a review of the State court record, the Court does not conclude that counsels' actions were not reasonable considering all the circumstances. Strickland, 466 U.S. at 691. The record supports that the defense counsel walked a fine line with revealing enough information about Gudinas' past institutional history to demonstrate that Gudinas was seriously emotionally disturbed, without portraying Gudinas as incapable of rehabilitation. Significantly, the trial court found the statutory mitigator—that Gudinas was under "the influence of an extreme mental or emotional disturbance" at the time of the murder, as well as the nonstatu[t]ory mitigator - - that Gudinas "has capacity to be rehabilitated." [F]urther, if counsel had called Gudinas' aunt [Ellen Evans] to testify, counsel could not have offered the testimony of Gudinas' mother, since the aunt's testimony was especially critical of and damaging to the mother's character. . . .
>
> Even if counsel is deemed deficient on any or all of the grounds, the Court finds that "[t]he aggravating circumstances of this case were utterly overwhelming," Strickland at 2071, and Petitioner can not show prejudice. There is no reasonable probability, based on the totality of the circumstances, that the mitigators would have outweighed the aggravators and resulted in a sentence other than that which was

7

recommended by a 10-2 margin. Petitioner's argument that the jury would have recommended life imprisonment is no more than mere speculation.

Consequently, the Court finds that Petitioner has not made the required showing of either deficient performance or sufficient prejudice to sustain a finding that counsel was ineffective, and the Court finds that Petitioner's sentencing proceeding was not fundamentally unfair.[5]

## II. DISCUSSION

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Williams v. Allen, 542 F.3d 1326, 1336 (11th Cir. 2008) (quotation marks omitted). "An ineffective assistance of counsel claim is a mixed question of law and fact subject to de novo review." Id. (quotation marks omitted) But we are "highly deferential" to the state court's decision on the merits of a claim. Cullen v. Pinholster, ---U.S.---, 131 S. Ct. 1388, 1398 (2011); Harrington v. Richter, ---U.S.---, 131 S. Ct. 770, 786 (2011). If a state court has adjudicated the merits of a claim, we may not grant habeas relief unless the state court's

---

[5] Although it does not alter our ultimate conclusion in this case, we note that the District Court erred in finding that part of Gudinas's ineffective assistance of counsel claim was procedurally barred. Gudinas alleged that his trial counsel were ineffective, in part, because they failed to present evidence of his emotional and mental immaturity. The state courts determined this claim was procedurally barred because the Florida Supreme Court, on direct appeal, had rejected Gudinas's claim that the trial court erred by failing to find his chronological age of twenty was mitigating. Of course,"[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." Wellons v. Hall, ---U.S.---, 130 S. Ct. 727, 730 (2010) (quotation marks omitted).

decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The familiar standard from Strickland governs our evaluation of Gudinas's ineffective assistance of counsel claim. 466 U.S. at 690–92, 104 S. Ct. at 2064–67. Under Strickland, Gudinas must show that his counsel's performance was deficient, which means that it "fell below an objective standard of reasonableness" and was "outside the wide range of professionally competent assistance." Id. at 688, 690, 104 S. Ct. at 2064, 2066; Smith v. Sec'y, Dep't of Corrs., 572 F.3d 1327, 1349 (11th Cir. 2009). In making this determination, we must review counsel's actions in a "highly deferential" manner and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. To show prejudice, Gudinas must demonstrate that, "but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different—that is, our confidence in the outcome

9

must be undermined by counsel's deficient performance." Johnson v. Sec'y, Dep't of Corrs., ---F.3d---, No. 09-15344, 2011 WL 2419885, at *19 (11th Cir. 2011).

We have carefully reviewed the state court record, including Gudinas's original trial and the state court evidentiary hearing, as well as the trial court's order and Florida Supreme Court's opinion denying his penalty phase ineffective assistance of counsel claim. As noted above, the state courts correctly identified and applied the Strickland standard so we cannot conclude that their decision was contrary to clearly established Supreme Court precedent. Windom v. Sec'y, Dep't of Corrs., 578 F.3d 1227, 1247 (11th Cir. 2009) ("A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's].") (quotation marks omitted and alterations in original).

Nor can we conclude that the state court "unreasonably" decided Gudinas's ineffective assistance of counsel claim. A state court unreasonably applies federal law when it "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case," or when it "unreasonably extends, or unreasonably declines to extend, a legal principle from

10

Supreme Court case law to a new context." Suggs v. McNeil, 609 F.3d 1218, 1227 (11th Cir. 2010) (quotation marks omitted). In determining unreasonableness, we do not ask whether the state court decided an issue correctly, but only whether the court's decision was objectively unreasonable. See Renico v. Lett, --- U.S. ---, 130 S. Ct. 1855, 1862 (2010).

Again, after correctly identifying Strickland, the Florida Supreme Court carefully evaluated every aspect of Gudinas's penalty phase ineffective assistance of counsel claim, including Gudinas's assertions that trial counsel failed to: (1) call Ellen Evans as a witness; (2) investigate and present Gudinas's juvenile history in DYS; (3) hire and present a social worker; (4) present history of substance abuse; and (5) substantiate Dr. O'Brian's testimony. See Gudinas II, 816 So. 2d at 1101–10. Gudinas also alleged trial counsel was ineffective for calling his sister, Michelle Gudinas, as a witness because her testimony allowed the prosecution to elicit damaging testimony regarding Gudinas's alleged sexual assault of her. Id. at 1109–10. In affirming the trial court's rejection of Gudinas's penalty phase ineffective assistance of counsel claims, the Florida Supreme Court found that Gudinas had shown neither deficient performance nor prejudice. Id. at 1101–10. For example, with respect to the assertion that trial

counsel should have called Ellen Evans as a witness, the Florida Supreme Court

stated:

> We find no error in the trial court's factual determination that Ms.
> Evans's testimony was in essence cumulative to the mitigation evidence
> actually presented at the penalty phase by experts and lay witnesses
> alike. In fact, much of Ms. Evans's 3.850 hearing testimony was similar
> to the mitigating evidence described in our previous opinion affirming
> the conviction and sentence. We cannot fault the trial court for not
> second-guessing defense counsels' work. While it was established that
> additional mitigating evidence existed, that is not the standard
> Strickland contemplates in evaluating counsel's performance. We also
> find no error in the trial court's determination that Gudinas has not
> demonstrated prejudice according to Strickland because he has not
> shown that if Ms. Evans had testified, her testimony would have
> provided a reasonable probability, sufficient to undermine confidence
> in the outcome, that the outcome of the proceeding would have been different.

Gudinas II, 816 So. 2d at 1105–06. With respect to Gudinas's claim that trial

counsel was ineffective for failing to investigate and present more detail of Gudinas's

institutional background with DYS, the state court stated:

> The lawyers' testimony at the 3.850 hearing revealed that they were
> fully informed as to Gudinas's institutional background and made an
> informed choice to present his background in a limited fashion so as to
> paint him in the best possible light, as someone who was able to be
> rehabilitated, rather than someone who had rejected numerous attempts
> at rehabilitation.

Id. at 1106.  As a result, the Court found that trial counsel's performance was not deficient based upon tactical considerations.  Id. at 1107.  Alternatively, assuming deficient performance, it concluded there was not prejudice.  Id.

Based upon our independent review of the record, and for all the reasons discussed above, we conclude that the Florida Supreme Court's opinion was neither contrary to, or an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d); Harrington, 131 S. Ct. at 786.  Therefore, we affirm the opinion of the District Court denying Gudinas's habeas corpus petition.

**AFFIRMED.**