# SUPREME COURT OF THE UNITED STATES

## ZENON GRZEGORCZYK *v.* UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 21–5967.  Decided June 30, 2022

The petition for a writ of certiorari is denied.

Statement of JUSTICE KAVANAUGH, with whom THE CHIEF JUSTICE, JUSTICE THOMAS, JUSTICE ALITO, and JUSTICE BARRETT join, respecting the denial of certiorari.

The defendant in this case wanted to murder six people whom he blamed for his divorce and for the loss of custody of his child.  He hired and paid hitmen.  And he told the hitmen to burn the six intended victims alive.  So that he would have a good alibi, the defendant planned to be in Poland when the murders occurred.  It turned out, however, that the would-be hitmen were undercover law enforcement officers.  So the defendant was arrested and federally charged with murder for hire and a firearms violation.

The United States then negotiated a plea deal with the defendant.  The plea agreement was unconditional.  Among other things, the defendant waived any right to challenge his murder-for-hire and firearms convictions.  Consistent with that plea agreement, the defendant was sentenced to almost 18 years of imprisonment.

A couple of years later, the defendant filed a motion under 28 U. S. C. §2255 collaterally challenging his firearms conviction.  Because of the defendant's unconditional guilty plea, the District Court denied the motion, and the Seventh Circuit affirmed.  Based on the Government's current view of certain cases decided after the defendant's guilty plea, the Government now asks this Court to vacate the Seventh Circuit's judgment and to order the Seventh Circuit to re-

consider the defendant's §2255 motion.  Because the Seventh Circuit correctly concluded that the defendant's unconditional guilty plea precluded any argument based on the new caselaw, this Court has no appropriate legal basis to vacate the Seventh Circuit's judgment.

That said, the Constitution affords the Executive Branch authority to unilaterally provide relief to the defendant, if the Executive wishes to do so.  The Framers of the Constitution contemplated that a federal criminal conviction or sentence might later be questioned by the Executive.  And Article II of the Constitution grants the President broad unilateral authority to pardon federal defendants and to commute federal sentences.  Art. II, §2, cl. 1.  Presidents regularly exercise that power.

In order to provide relief to the defendant in this case, the Executive Branch therefore has no need to enlist the Judiciary, or to ask the Judiciary to depart from standard practices and procedures.  To the extent that the Department of Justice has concluded that this defendant's conviction should be vacated or that his sentence should be reduced, the Attorney General may recommend a pardon or commutation to the President, and the President may pardon the defendant or commute the sentence.

# SUPREME COURT OF THE UNITED STATES

## ZENON GRZEGORCZYK *v.* UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 21–5967.  Decided June 30, 2022

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER, JUSTICE KAGAN, and JUSTICE GORSUCH join, dissenting from the denial of a grant, vacate, and remand order.

Neither the Federal Government nor federal courts are immune from making mistakes. Accordingly, on rare occasions, after the Government prevails in a case in a court of appeals, the Solicitor General asks this Court to grant a petition for certiorari, vacate the judgment below, and remand (GVR) in light of an error or an intervening development. Such requests occur in only a handful of the several thousand cases this Court considers every Term on its certiorari docket. When they are made, however, they are often of enormous consequence to the nongovernmental party. They may affect a petitioner's deportation, the length of a petitioner's prison sentence, or even a petitioner's eligibility for the death penalty.

Today marks the second instance this Term in which this Court has refused to issue a GVR order, notwithstanding the Solicitor General's confession of error, in a criminal case with great stakes for the individual petitioner. See *Coonce* v. *United States*, 595 U. S. \_\_\_ (2021) (SOTOMAYOR, J., dissenting). Through these cases, the Court appears to be quietly constricting its GVR practice. Here, it deprives petitioner Zenon Grzegorczyk of an opportunity to remedy an unlawful 7½-year component of his prison sentence, despite the Government's support. Nothing in precedent or history supports such a cramped conception of the Court's GVR practice, which forces individuals like Grzegorczyk to bear the brutal cost of others' errors and denies them the benefit

of a readily available, and potentially life-altering, procedural mechanism to correct those errors.

## I

In 2014, Grzegorczyk pleaded guilty in federal court to one count of knowingly using a facility of interstate commerce with intent that a murder be committed, in violation of 18 U. S. C. §1958(a), and one count of possessing a firearm in furtherance of a "crime of violence," in violation of §924(c)(1)(a). Grzegorczyk's §924(c) conviction was expressly premised on his §1958(a) conviction as the predicate "crime of violence." Brief for United States 4. The District Court sentenced Grzegorczyk to a total of 17 years and 7 months' incarceration, 5 years of which were for the §924(c) charge. In his plea agreement, Grzegorczyk waived his right to appeal except as to the validity of his plea and the sentence imposed.

This Court subsequently held the residual clause of §924(e), defining "violent felony" for purposes of the Armed Career Criminal Act, unconstitutionally vague. See *Johnson* v. *United States*, 576 U. S. 591, 597 (2015). Grzegorczyk filed a motion under 28 U. S. C. §2255, arguing that the similarly worded residual clause defining "crime of violence" in 18 U. S. C. §924(c)(3)(B) was unconstitutionally vague, that his §1958(a) conviction did not independently qualify as a "crime of violence" under the elements clause of §924(c)(3)(A), and that his §924(c) conviction was therefore invalid. While the motion was pending, this Court struck down §924(c)(3)(B) as unconstitutionally vague. See *United States* v. *Davis*, 588 U. S. ___, ___ (2019) (slip op., at 24).

The District Court denied Grzegorczyk's motion based on his waiver of appellate rights. Grzegorczyk appealed, arguing that his claim was cognizable. The Government responded that although §924(c)(3)(B) was indeed unconstitutional, Grzegorczyk's §1958(a) conviction nevertheless

constituted a "crime of violence" under the elements clause of §924(c)(3)(A), so his §924(c) conviction remained valid. The Government also chose to invoke Grzegorczyk's appeal waiver as a procedural bar to his claims. The Seventh Circuit sided with the Government solely as to Grzegorczyk's waiver of rights.

Grzegorczyk petitioned for certiorari. The Government responded by asking this Court to issue a GVR order. See Brief for United States 7–8. The Government explains that "its usual practice is to waive any applicable procedural defenses on collateral review" where it "determines that a defendant's conviction under Section 924(c) is invalid and no other grounds support the defendant's overall sentence." *Id.*, at 10–11. Below, the Government did not follow this practice, and instead invoked Grzegorczyk's waiver, because it mistakenly believed §1958(a) to be a "crime of violence" under the elements clause of §924(c)(3)(A). Now, however, the Government has determined, in view of §1958(a)'s elements, that the offense does not satisfy the requirements of §924(c)(3)(A) and therefore does not constitute a "crime of violence." As a result, the Government "agrees . . . that [Grzegorczyk's] Section 924(c) conviction is . . . invalid," and it asks this Court to issue a GVR order to "allow the district court to reevaluate [Grzegorczyk's] sentence." *Id.*, at 10, 11.

The Government adds that GVR would permit correction of an additional error in Grzegorczyk's sentence: The parties had erroneously agreed that his §1958(a) conviction (for which the District Court imposed a sentence of 12 years and 7 months' incarceration) had a statutory maximum punishment of 20 years, when in fact the relevant statutory maximum was 10 years. Between the 2 years and 7 months of extrastatutory punishment imposed on the §1958(a) conviction and the 5 years imposed on the concededly invalid §924(c) conviction, then, over 7½ years of unlawful incarceration hang in the balance.

Nonetheless, this Court denies certiorari.

## II

Grzegorczyk's case falls comfortably within this Court's longstanding GVR practice, as codified in statute and applied in precedent. The authority for this practice stems from 28 U. S. C. §2106, which provides that "[t]he Supreme Court . . . may . . . vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and . . . require such further proceedings to be had as may be just under the circumstances."

This Court has historically exercised this broad grant of authority to issue GVR orders in many circumstances, including, as relevant here, "in light of the position asserted by the Solicitor General" (*e.g.*, where the Solicitor General confesses error). The Court has entered GVR orders on the Government's motion, without undertaking any express analysis of the merits, for well over a century. See, *e.g.*, *De Baca* v. *United States*, 189 U. S. 505 (1903) (*per curiam*) ("Error being confessed by the appellees, judgment reversed, and cause remanded with directions to proceed therein according to law"); *Ballin* v. *Magone*, 140 U. S. 670 (1891) (*per curiam*) ("Judgment reversed, with costs, by consent of [the Attorney General], who confessed error, and cause remanded to be proceeded in according to law and justice, on motion of *Mr Assistant Attorney General Maury* for defendant in error").[1]

In the modern era, the Court has explained that a GVR order may be appropriate even where the Solicitor General may not concede, or the Court may not perceive, an absolute certainty that the judgment would be different on remand:

---

[1] Although these orders refer to reversal rather than vacatur, the difference in terminology appears to be an artifact of the era. See A. Bruhl, The Remand Power and the Supreme Court's Role, 96 Notre Dame L. Rev. 171, 195, n. 111, 231, n. 319 (2020) (Bruhl).

"Where intervening developments, or recent developments that we have reason to believe the court below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation, a GVR order is, we believe, potentially appropriate. Whether a GVR order is ultimately appropriate depends further on the equities of the case . . . ." *Lawrence* v. *Chater*, 516 U. S. 163, 167–168 (1996) (*per curiam*).

The justifications for this "reasonable probability" standard are many. The Court has explained that a GVR order can, depending on the circumstances, "conserv[e] the scarce resources of this Court that might otherwise be expended on plenary consideration, assis[t] the court below by flagging a particular issue that it does not appear to have fully considered, assis[t] this Court by procuring the benefit of the lower court's insight before we rule on the merits, and alleviat[e] the '[p]otential for unequal treatment' that is inherent in our inability to grant plenary review of all pending cases raising similar issues." *Id.*, at 167. In the criminal context in particular, the Court has emphasized that "[w]hen a litigant is subject to the continuing coercive power of the Government in the form of imprisonment, our legal traditions reflect a certain solicitude for his rights, to which the important public interests in judicial efficiency and finality must occasionally be accommodated." *Stutson* v. *United States*, 516 U. S. 193, 196 (1996) (*per curiam*).

Applying this standard here, a GVR order is entirely appropriate. The Solicitor General's considered concession that 18 U. S. C. §1958(a) is not a "crime of violence" under the elements clause of §924(c)(3)(A) is an intervening development that has triggered the Government's agreement to

forgo assertion of the procedural bar that proved decisive below. Consequently, there is surely a reasonable probability of a different result on remand: With the Government waiving the procedural bar, Grzegorczyk's §924(c) conviction and 5-year sentence should be vacated, and his §1958(a) sentence reduced by at least 2 years and 7 months.[2] Moreover, given the stakes for Grzegorczyk, as well as the Government's express consent, this is a case where the marginal cost to judicial efficiency and finality from a remand should yield to solicitude for Grzegorczyk's rights. "[F]urther proceedings" are therefore "just under the circumstances," 28 U. S. C. §2106, and the Court should issue a GVR order.

## III

Notwithstanding the foregoing analysis, and contrary to *Lawrence* and *Stutson*, the Court denies certiorari. It thereby deprives Grzegorczyk of an opportunity to correct two patent errors in his convictions and sentences, despite the Government's urging. Current and former Members of this Court have raised arguments for constricting this Court's longstanding GVR practice, but none justify this harsh result.

Some Justices have opined, contrary to the aforementioned precedents, that GVR orders are inappropriate unless the Solicitor General confesses error in the outcome below, not just the reasoning, or the Court itself determines that the outcome was erroneous.[3] To begin with, however,

--------

[2] The courts below and the parties could also consider on remand whether any of the charges dismissed pursuant to Grzegorczyk's plea agreement should be revived, see Brief for United States 11, but any such consideration would not bear on the undisputed invalidity of Grzegorczyk's §924(c) conviction. The dismissed counts of Grzegorczyk's indictment also charged violations of §1958(a), which the Government now concedes are not "crime[s] of violence" for purposes of §924(c).

[3] See, *e.g.*, *Myers* v. *United States*, 587 U. S. ___, ___ (2019) (ROBERTS, C. J., dissenting) (slip op., at 1) (GVR order in a criminal case where the

this alternative view does not support the instant disposition. As the Solicitor General explains, the procedural bar on which the Court of Appeals premised its denial of relief to Grzegorczyk is waivable, and the Government would waive it on remand. See Brief for United States 11 (citing *Wood* v. *Milyard*, 566 U. S. 463, 472–473 (2012)). The Government's concession that Grzegorczyk's 18 U. S. C. §924(c) conviction is invalid, coupled with the Government's commitment to forgo reliance on the procedural bar, thus leaves little room for any result other than vacatur of (at least) that conviction and sentence.

Even setting aside the circumstances of this case, the alternative view fails on its own merits. It cannot be squared with the only textual limitation on the Court's statutory authority in such cases, which requires that a GVR order "be just under the circumstances." 28 U. S. C. §2106.[4] This Court's prior GVR practice recognizes that deprivations of process, particularly where the stakes for individual liti-

––––––––––

Solicitor General "believe[d] the Eighth Circuit made some mistakes in its legal analysis, even if it ultimately reached the right result"); *Machado* v. *Holder*, 559 U. S. 966 (2010) (same) (GVR order in an immigration case where the Solicitor General "suggest[ed] that the Court of Appeals ignored petitioners' nonconstitutional claim of ineffective assistance of counsel" but "d[id] not . . . take the position that the judgment reached [below] was incorrect," and "this Court ha[d] not independently examined the merits of that judgment"); *Nunez* v. *United States*, 554 U. S. 911, 912 (2008) (Scalia, J., dissenting) ("In my view we have no power to set aside (vacate) another court's judgment unless we find it to be in error," or at least "when the Government, without conceding that a *judgment* is in error, merely suggests that the lower court's *basis* for the judgment is wrong").

[4] Justice Scalia suggested that "implicit [constitutional] limitations imposed . . . by the nature of the appellate system" may deprive this Court of the power to vacate judgments not determined to be in error. *Lawrence* v. *Chater*, 516 U. S. 163, 178 (1996) (dissenting opinion); see also *id.*, at 189–190. The Court correctly rejected this view as lacking any textual basis and as inconsistent with historical practice. *Id.,* at 166–167 (*per curiam*).

gants are high, are unjust in and of themselves. Such deprivations harm not only litigants but also the legal system itself, confidence in which is eroded when known, consequential, and remediable errors are needlessly left uncorrected. Cf. *Rosales-Mireles* v. *United States*, 585 U. S. ___, ___ (2018) (slip op., at 10) ("In broad strokes, the public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction'"). Respect for these concerns can justify the marginal cost to efficiency and finality occasioned by a GVR order, as this Court has recognized. See, *e.g.*, *Stutson*, 516 U. S., at 197 ("'[D]ry formalism should not sterilize procedural resources which Congress has made available to the federal courts,'" at least where "a GVR order guarantees to the petitioner full and fair consideration of his rights . . . and is also satisfactory to the Government").[5]

The alternative view does a grave disservice to these principles. By dismissing GVR orders as mere "tutelary remand[s], as to a schoolboy made to do his homework again," *Lawrence*, 516 U. S., at 185–186 (Scalia, J., dissenting), it gives little or no weight to concerns about injustice to litigants and damage to public confidence. No doubt, this Court must guard zealously against unwarranted impositions upon "the hard-working judges of the [Courts of Appeals]." *Myers* v. *United States*, 587 U. S. ___, ___ (2019) (ROBERTS, C. J., dissenting) (slip op., at 1). Clearly, however, no judges would privilege their workloads above all

––––––––––

[5] The Court once valued these concerns so deeply that in unusual cases, it issued GVR orders even where purportedly independent grounds, decided by the court below, supported the judgment. See *Wellons* v. *Hall*, 558 U. S. 220, 222, 224 (2010) (*per curiam*) (issuing a GVR order where a Court of Appeals erroneously applied a procedural bar and also stated it would independently deny relief on the merits, because the Court of Appeals gave, "at most, perfunctory consideration" to the merits without the benefit of an evidentiary hearing, leaving this Court unsure whether the merits determination "really was independent" of the error).

other considerations, particularly courts' interest in the fair administration of justice.

The suggestion that this Court should independently evaluate a confession of error on the merits before issuing a GVR order also falters. This Court has often remarked that it is "a court of review, not of first view." *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005). The Court's longstanding GVR practice is consistent with that conception: It does not engage this Court in routine error correction, but leaves it to the lower courts to revisit their judgments, including possible alternative grounds for those judgments, in the first instance. See *Lawrence*, 516 U. S., at 167; *Stutson*, 516 U. S., at 197.[6] In this way, GVR orders enable the Government and the lower courts to share in the work of ensuring that our legal system does not erroneously "deny someone his liberty longer than the law permits." See *Hicks* v. *United States*, 582 U. S. ___, ___ (2017) (GORSUCH, J., concurring) (slip op., at 3).

Because none of the aforementioned objections apply to Grzegorczyk's petition, see *supra,* at 6–7, the Court's denial of certiorari must be premised on a different justification, one still more novel. That rationale seems to be this: The Government's shift in position, though an intervening development, is not the kind of development that warrants a GVR order. The Court's apparent concern is that although the Government concedes that the premise of the decision

——————

[6] This Court's issuance of GVR orders without forecasting definite outcomes on remand also accords with other established appellate practices. For example, an appellate court may vacate and remand for consideration of mootness without determining that a case is moot. Similarly, this Court frequently reverses or vacates a lower court's judgment on one ground, but remands for consideration of alternative grounds, such as harmlessness, that may ultimately support the lower court's original judgment. See Bruhl 232–233. Moreover, my colleagues do not appear to question this Court's authority to issue a GVR order where an intervening decision of this Court bears on the reasoning below, again without determining whether the judgment itself is invalid.

below (the Government's assertion of a procedural bar) has changed, the Government does not object to the legal analysis that flowed from that premise (that the procedural bar, if asserted, foreclosed Grzegorczyk's claim). See *ante,* at 1– 2 (statement of KAVANAUGH, J., respecting denial of certiorari).

This Court's GVR practice, however, has never been so inflexibly focused on correcting legal errors. Rather, as explained, this Court has long issued GVR orders to facilitate the fair and just resolution of individual cases in the lower courts. See, *e.g.*, *Lawrence*, 516 U. S., at 174–175 (issuing a GVR order to allow a lower court to "consider [a new] administrative interpretation that appears contrary to the Government's narrow self-interest" and "furthe[r] fairness by treating Lawrence like other future benefits applicants"). It is therefore no answer to observe that the Government "should have no difficulty presenting [a] matter to subsequent panels of the [Court of Appeals]" in other cases. *Myers*, 587 U. S., at ___ (ROBERTS, C. J., dissenting) (slip op., at 2). The Government's future litigation positions offer cold comfort to a petitioner who must face additional years in prison, if not deportation or execution, based solely on happenstance, and despite the ready availability of a remedy that the Government affirmatively advocates.[7]

Ultimately, underpinning many criticisms of the Court's

––––––––––

[7] Nor can the Court's denial of a GVR order be justified by the remote possibility of a Presidential pardon or commutation. See *ante,* at 2 (statement of KAVANAUGH, J.). Plainly, the Article II pardon power, which applies in all federal criminal cases, does not obviate or impliedly displace available judicial processes and remedies. To the contrary, while Presidential pardons and commutations may be granted as acts of mercy, to address changes in society or personal circumstances, or for other reasons, they have never been understood as mechanisms for correcting errors, whether by courts or by the Government. Moreover, relying on the theoretical availability of a pardon overlooks the fact that the courts, not just the Government, initially erred by approving Grzegorczyk's unlawful sentence in excess of the statutory maximum.

GVR practice seems to be a desire to teach the Government that it must live with its own litigation choices. That logic persuades where, for example, the Government appears to seek a GVR order as "part of an unfair or manipulative litigation strategy," such as an effort to avoid this Court's review of an issue. *Lawrence*, 516 U. S., at 168; see also *Hicks*, 582 U. S., at \_\_\_ (GORSUCH, J., concurring) (slip op., at 3) (cautioning against issuing a GVR order "when the confession bears the marks of gamesmanship"). It is inapt here. I agree that it would have been preferable for the Government to correct its mistake during the proceedings below. But the Government will learn no lesson, because it will pay no price. By denying certiorari rather than issuing a GVR order, the Court allocates the full cost of the Government's error to Grzegorczyk, who faces over 7½ extra years of incarceration as a result.

\*     \*     \*

All agree that a GVR order is inappropriate when the outcome plainly would not change on remand. Here, however, significant portions of Grzegorczyk's convictions and sentences are unfair and illegal, as Grzegorczyk's prosecuting and jailing authority concedes. In view of Grzegorczyk's liberty interests, and consistent with the Government's responsibility to ensure that the laws are applied fairly and accurately, the Solicitor General asks this Court to afford the Government and the courts below a chance to address this concern, as the Court has done for decades. Yet the Court declines to do so. The rules of law under which people are deprived of their liberty or their lives should be made of sturdier stuff. I respectfully dissent.