FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEPH RUDOLPH WOOD, III, *Plaintiff-Appellant*, | No. 14-16310 |
| v. | D.C. No. 2:14-cv-01447-NVW-JFM |
| CHARLES L. RYAN, Director of the Arizona Department of Corrections; et al., *Defendants-Appellees*. | ORDER |

Filed July 21, 2014

Before: Sidney R. Thomas, Circuit Judge
and Capital Case Coordinator.

Order by Judge Thomas;
Dissent by Chief Judge Kozinski;
Dissent by Judge Callahan

# SUMMARY[*]

## Habeas Corpus

Judge Thomas, Circuit Judge and Capital Case Coordinator, issued an order on behalf of the court denying a petition to rehear en banc the panel's July 19, 2014, opinion.

Chief Judge Kozinski dissented from the denial of rehearing en banc. He wrote that if Baze could not get a stay of execution under the Eighth Amendment, *see Baze v. Rees*, 553 U.S. 35, 62-63 (2008), Wood certainly is not entitled to one under the First. While he believes the state should and will prevail in this case, Chief Judge Kozinski wrote that if the state wishes to continue carrying out executions, it would be better to own up that using drugs is a mistake and come up with something that will work, instead.

Judge Callahan, joined by Chief Judge Kozinski and Judges O'Scannlain, McKeown, Tallman, Bybee, Bea, M. Smith, Ikuta, N.R. Smith and Owens, dissented from the denial of rehearing en bqanc. She wrote that the panel's opinion reversing the district court's denial of an injunction based on the creation of a First Amendment right to government information is contrary to Supreme Court precedent, is not sound, and creates a circuit split. She wrote further that the opinion's limits – information "intrinsically intertwined" with this newly recognized right – are

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

amorphous at best, and if not vacated, will be invoked every time a state sets an execution date.

## ORDER

The full court has been advised of the petition for rehearing en banc. Pursuant to the rules applicable to capital cases in which an execution date has been scheduled, a deadline was established by which any judge could request a vote on whether the panel's July 19, 2014 opinion should be reheard en banc. A judge requested a vote on whether to rehear the panel's opinion en banc. A majority of the non-recused active judges did not vote in favor of rehearing en banc. Judges Graber, Murguia, and Hurwitz did not participate in the deliberations or vote in this case. The petition for rehearing en banc is denied. The Court's July 19, 2014 opinion, granting a conditional stay of Wood's execution, remains in effect.

Chief Judge KOZINSKI, dissenting from the denial of rehearing en banc:

I have little doubt that the Supreme Court will thwart this latest attempt to interfere with the State of Arizona's efforts to carry out its lawful sentence and bring Wood to justice for the heinous crimes he committed a quarter century ago. There is little I can add to the irrefutable arguments in Judge Bybee's dissent and Judge Callahan's dissental. If Baze could not get a stay of execution under the Eighth Amendment, *see Baze* v. *Rees*, 553 U.S. 35, 62–63 (2008), Wood certainly is not entitled to one under the First.

I take the occasion to point out how we got here. Until about three decades ago, executions were carried out by means designated for that purpose alone: electric chairs were the most common, but gas chambers, hanging and the occasional firing squad were also practiced. *See generally* Kirk Johnson, *In Utah, Execution Evokes Eras Past*, N.Y. Times, June 16, 2010, *available at* http://goo.gl/duIwV0 (discussing Gary Mark Gilmore's execution by firing squad). Most of these means were challenged on Eighth Amendment grounds, but the challenges were largely unsuccessful. *See Poyner* v. *Murray*, 507 U.S. 981, 981 (1993) (denying stay of execution by electric chair); *Stewart* v. *LaGrand*, 525 U.S. 1173, 1173 (1999) (vacating stay of lethal gas execution); *Campbell* v. *Wood*, 18 F.3d 662, 687 (9th Cir. 1994) (hanging); *Wilkerson* v. *Utah*, 99 U.S. 130, 131–36 (1879) (firing squad). Nevertheless, starting in the late 1970s, states began moving away from these traditional methods of execution and towards using drugs as execution tools. Perhaps this was done in the belief that it would forestall a constitutional challenge to the method of execution; perhaps it was thought to be more humane; and perhaps it was thought to be less brutal. Whatever the reason, the federal government and all states that retain capital punishment now authorize the use of drugs for that purpose, and generally it is the default method of execution.

Whatever the hopes and reasons for the switch to drugs, they proved to be misguided. Subverting medicines meant to heal the human body to the opposite purpose was an enterprise doomed to failure. Today's case is only the latest in an unending effort to undermine and discredit this method of carrying out lawful executions. Another symptom of the problem is the decade-long inability (or perhaps unwillingness) of California state officials to come up with an

execution protocol, effectively putting the state's death chamber out of commission. *See Jones* v. *Chappell*, No. CV 09-02158-CJC, slip op. at 5 n.7 (C.D. Cal. July 16, 2014). Old age, not execution, is the most serious risk factor for inmates at the San Quentin death row. Then, again, you get odd cases like that of Russell Bucklew, who obtained a stay of execution on the ground that the drugs that would be used to kill him would cause a lingering, painful death. *See Bucklew* v. *Lombardi*, 134 S. Ct. 2333, 2333 (2014).

Whatever happens to Wood, the attacks will not stop and for a simple reason: The enterprise is flawed. Using drugs meant for individuals with medical needs to carry out executions is a misguided effort to mask the brutality of executions by making them look serene and peaceful—like something any one of us might experience in our final moments. *See Callins* v. *Collins*, 510 U.S. 1141, 1143 (1994) (Scalia, J., concurring in denial of certiorari) ("How enviable a quiet death by lethal injection . . . ."). But executions are, in fact, nothing like that. They are brutal, savage events, and nothing the state tries to do can mask that reality. Nor should it. If we as a society want to carry out executions, we should be willing to face the fact that the state is committing a horrendous brutality on our behalf.

If some states and the federal government wish to continue carrying out the death penalty, they must turn away from this misguided path and return to more primitive—and foolproof—methods of execution. The guillotine is probably best but seems inconsistent with our national ethos. And the electric chair, hanging and the gas chamber are each subject to occasional mishaps. The firing squad strikes me as the most promising. Eight or ten large-caliber rifle bullets fired at close range can inflict massive damage, causing instant

death every time. There are plenty of people employed by the state who can pull the trigger and have the training to aim true. The weapons and ammunition are bought by the state in massive quantities for law enforcement purposes, so it would be impossible to interdict the supply. And nobody can argue that the weapons are put to a purpose for which they were not intended: firearms have no purpose *other* than destroying their targets. Sure, firing squads can be messy, but if we are willing to carry out executions, we should not shield ourselves from the reality that we are shedding human blood. If we, as a society, cannot stomach the splatter from an execution carried out by firing squad, then we shouldn't be carrying out executions at all.

While I believe the state should and will prevail in this case, I don't understand why the game is worth the candle. A tremendous number of taxpayer dollars have gone into defending a procedure that is inherently flawed and ultimately doomed to failure. If the state wishes to continue carrying out executions, it would be better to own up that using drugs is a mistake and come up with something that will work, instead.

---

Judge CALLAHAN, with whom Chief Judge KOZINSKI, Judge O'SCANNLAIN, Judge McKEOWN, Judge TALLMAN, Judge BYBEE, Judge BEA, Judge M. SMITH, Judge IKUTA, Judge N.R. SMITH, and Judge OWENS join, dissenting:

I dissent from our decision not to take this case en banc. The panel's opinion reversing the district court's denial of an injunction based on the creation of a First Amendment right

to government information[1] is contrary to Supreme Court precedent,[2] is not sound, and creates a circuit split.[3] Furthermore, the opinion's limits – information "intrinsically intertwined" with this newly recognized right – are amorphous at best, and if not vacated, will be invoked every time a state sets an execution date.[4]

---

[1] Wood claims a First Amendment right to further information concerning: (1) the manufacturer of his lethal injection drugs; (2) the qualifications of those who will administer the execution; and (3) the documents relied upon by the state to adopt its newest execution protocol.

[2] *See Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978); *Los Angeles Police Dep't. v. United Reporting Publig Corp.*, 528 U.S. 32, 40 (1999).

[3] *See Wellons v. Comm'r, Ga. Dep't of Corr.*, No. 14-12663-P, 2014 WL 2748316, — F.3d — (11th Cir. June 17, 2014).

[4] The majority's opinion does include the following penultimate sentence:

> We grant a conditional preliminary injunction, staying Wood's execution until the State of Arizona has provided him with (a) the name and provenance of the drugs to be used in the execution and (b) the qualifications of the medical personnel, subject to the restriction that the information provided will not give the means by which the specific individuals can be identified.

Opinion at page 25–26. Even assuming that the term "provenance of the drugs" is understood by the parties, the second qualification is an invitation to further litigation. Arizona has already informed Wood that the medical personnel will meet the qualifications in its 2012 protocol. Opinion at page 6. Whether Arizona could provide additional information without giving "the means by which the specific individuals can be identified" seems inherently debatable. It should be noted that Arizona Revised Statute § 13-757(C) provides that "any information contained in records that would identify those persons is confidential." Furthermore,

My concerns are addressed in Judge Bybee's compelling dissent. For example, he explains that the two "complementary considerations" set forth in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"), are not met.[5]  Executions historically have been open to the public, but this does not mandate revealing the manufacturer of the lethal drugs. Similarly, it is a stretch to

the majority's opinion may be read as an invitation to require courts to fashion individual disclosure orders any time a capital defendant seeks (on behalf of the public) further information concerning his execution.

[5] In *Press-Enterprise II*, the Supreme Court stated:

> First, because, a "'tradition of accessibility implies the favorable judgment of experiences'" *Globe Newspaper*, 457 U.S., at 605, 102 S. Ct., at 2619 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589, 100 S. Ct. 2814, 2834, 65 L. Ed.2d 973 (1980) (BRENNAN, J., concurring in judgment)), we have considered whether the place and process have historically been open to the press and general public.
>
> . . .
>
> Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question. *Globe Newspaper, supra,* 457 U.S., at 606, 102 S. Ct., at 2619. Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly.

478 U.S. at 8–9. Here, the State of Arizona has given a compelling reason why disclosure of the identities of both the drug manufacturer and execution personnel will cause harm to its ability to carry out its lawful judgments.

argue that the identity of the manufacturer is critical to the public discussion of the process.

Finally, the opinion's approach to the standards for injunctive relief is problematic. It recognizes that we review the "denial of a preliminary injunction for abuse of discretion." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). It also states that to obtain a preliminary injunction, Wood "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). However, the opinion then cites *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012), for the proposition that Wood need only demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in [his] favor." Opinion at page 9. This allows the panel to issue an injunction because the "balance of equities here tips sharply in Wood's favor," Opinion at page 23, even though the panel, in determining that Wood has raised serious questions, states that it has not decided "with certainty that a First Amendment right exists to the information Wood seeks, nor do we resolve the merits of the Plaintiffs' underlying § 1983 claim." Opinion at page 25. This fails to appreciate the difference between Wood's personal interests and the "public's" right to access, which is the issue the panel found to be "serious." The opinion thus suggests that a defendant facing the death penalty never need show any likelihood of success on a First Amendment claim

in order to obtain an injunction because the nature of his sentence inherently tips the balance of hardship in his favor.[6]

In adopting an unprecedented view of the First Amendment and labeling it "serious" (while stating that it is not deciding "with certainty" that such a right exists), the panel has erected another hurdle to carrying out valid death penalties: one that is unrelated to the defendant's innocence or the propriety of the sentence. I fear that absent firmer guidance from the Supreme Court, it will be almost impossible for any state in the Ninth Circuit to actually carry out a constitutionally valid capital sentence. I dissent from our decision denying rehearing en banc.

---

[6] Moreover, the panel underestimates both the State's interest and the harm to the public. First, the panel's assertion that "Wood's execution would likely not be delayed much, if at all, by giving him the information he seeks," Opinion at page 24, fails to recognize that the panel's conditions for lifting its injunction will most likely require further litigation. *See supra* note 4. Second, the panel fails to appreciate that the right which it finds "serious" only arises after the state sets an execution date, and accordingly, must then be litigated prior to the scheduled execution. Third, the panel fails to consider the interests of the public and the friends and relations of Wood's victims in closure. There is a mismatch between the majority's articulated public claim of access to information and the remedy tied to the stay of execution.