JORDAN, Circuit Judge,
dissenting:
In my view, the district court erred in dismissing one of the two Eighth Amendment claims pled by Ms. Gissendaner, i.e., the claim that Georgia is using compounded pentobarbital in an adulterated form in a way that creates a serious risk that she will be subjected to needless suffering during her upcoming execution. And this error, I think, resulted in the improper denial of her motion for stay of execution. As I see it, Ms. Gissendaner alleged enough to mount an as-applied challenge to Georgia’s execution protocol and to obtain a stay. With respect, I dissent.[1]
I
On March 2, 2015, the day Georgia was scheduled to put Ms. Gissendaner to death, we issued an opinion rejecting her facial Eighth Amendment challenge to Georgia’s lethal-injection protocol. We held that her challenge was untimely, and that, in any event, it failed on the merits. See Gissendaner v. Comm’r, 779 F.3d 1275, 1280-83 (11th Cir.2015) (Gissendaner I). With respect to the merits of the Eighth Amendment claim, we ruled that “[n]one of [Ms.] Gissendaner’s factual allegations or evidence present facts that establish a high level of likelihood that she will suffer serious illness or needless suffering during her execution.” Id. at 1283 (alteration added). But just hours after we issued our ruling, things changed, and they changed in a material way.
*577 A
According to Ms. Gissendaner’s complaint in this case, Georgia did not go through with the scheduled execution on the night of March 2, 2015, because the state’s doctor and pharmacist each concluded that the compounded pentobarbital which was to be injected into her — the only drug now used by Georgia to carry out executions — was “visibly cloudy” and “not appropriate for medical use.” Compl. at 6, 8-9. Although it is not known why the pentobarbital was cloudy, Georgia’s counsel indicated that night that there was no problem with the state’s supplier of the compounded drug, and said that “this batch [of drugs] just did not come out like it was supposed to.” Id. at 9, 14 (alteration added). Georgia’s counsel also said that the state would conduct an investigation. By the time Ms. Gissendaner filed her compláint, however, Georgia had not disclosed what it had done to investigate the cloudy pentobarbital or what, if anything, its investigation had revealed. And, according to the complaint, Georgia would not disclose such information due to its state secrecy law. See Ga.Code Ann. § 42-5-36(d) (classifying as a “confidential state secret” any identifying information concerning any person or entity participating in an execution).
Ms. Gissendaner alleged in her complaint that, according to her medical expert (whose declaration was attached), there is a foreseeable risk that the use of compounded drugs in lethal injections in Georgia would be substandard “in a manner that would cause severe pain upon or . shortly after injection.” Compl. at 14. That expert further opined that “[w]henever a solution that is supposed to be clear turns cloudy, it indicates one of a number of serious problems that make the drug unusable and dangerous.” Id. at 15-16 (internal quotation marks omitted) (emphasis original). Finally, the expert opined that the possible explanations for the cloudy pentobarbital included that the compounding pharmacy lacks the expertise or ability to properly manufacture the drug, or that Georgia officials lack the equipment and training to properly store the drugs, and that either problem could create the risk of severe pain. Id. at 16-20.
Had Ms. Gissendaner been injected with cloudy compounded pentobarbital containing particulate matter, she would have suffered “terrible pain,” and if she had been injected with cloudy compounded pento-barbital with an improper pH she would have felt “intense, burning pain” upon injection. Id. at 17-18. The complaint also alleged that there had been three botched executions with compounded pentobarbital in Oklahoma, Texas, and South Dakota. Id. at 19-20.
In addition, Ms. Gissendaner noted that Georgia ran afoul of the Food and Drug Administration by illegally importing sodium thiopental. Id. at 25-26. And since June of 2013, Georgia had been paying an unidentified doctor the sum of $5,000 to write prescriptions “for” condemned prisoners so that a pharmacy can then compound the pentobarbital that will be used at executions. Id. at 28. Citing § 42-5-36(d), Georgia has recently refused to provide any documents which shed light on how the pentobarbital is compounded, stored, or used, or on the qualifications of those who compound, obtain, or administer the pentobarbital. Id. at 28-32.'
Finally, Ms. Gissendaner alleged that many of the representations made by Georgia to the district court in Gissen-daner I have been proven demonstrably false or are incapable of confirmation due to Georgia’s penchant for secrecy. These include claims that the compounded pen- *578 tobarbital is exactly the same as the previous FDA-approved pentobarbital; pen-tobarbital is not difficult to compound; the state will not try to carry out executions if it does not have properly compounded pentobarbital; the prison team which carries out executions is qualified and experienced. Id. at 34-36.
B
The district court dismissed Ms. Gissen-daner’s as-applied Eighth Amendment claim for two reasons. First, although it recognized that there was a factual difference — the cloudy compounded pentobarbi-tal on March 2 — between this case and Gissendaner I, the district court concluded that the March 2 incident “shows that the state is unlikely to use defective drugs” on Ms. Gissendaner. D.E. 29 at 13 (emphasis original). Because a doctor and pharmacist agreed on March 2 that the compounded pentobarbital was cloudy, Georgia officials decided not to go forward with the execution. See id. at 13-14. Second, the district court ruled that Ms. Gissendaner “failed to adequately allege that there is a substantial risk that the drugs obtained for future execution will be defective.” Id. at 14. The district court explained that Ms. Gissendaner had not alleged that the compounded pentobarbital was “necessarily defective,” nor had she alleged that it would have “caused ‘serious illness and needless suffering.’ ” Id. According to the district court, “even assuming that the drugs were defective, that alone does not necessarily mean that it is significantly likely that defective drugs will be obtained again. [Ms. Gissendaner’s] claim still amounts to speculation[J” Id. (alteration added).
II
The district court’s Rule 12(b)(6) dismissal of Mr. Gissendaner’s complaint generates plenary review. See Lopez v. First Union Nat Bank of Florida, 129 F.3d 1186, 1189 (11th Cir.1997). This standard requires that we accept all factual allegations in the complaint as true and that we construe them in the “light most favorable” to Mr. Gissendaner. See, e.g., Christopher v. Harbury, 536 U.S. 403, 406, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002); Timson v. Sampson, 518 F.3d 870, 872 (11th Cir.2008).
To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to make a claim “plausible on its face.” Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A “claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Significantly, the Court in Iqbal emphasized that “the plausibility standard is not akin to a ‘probability requirement[.]’ ” Id.
A
The district court did not accept as true all of the allegations in the complaint, and it did not construe the allegations in the light most favorable to Ms. Gissendaner. I would therefore reverse the dismissal of the complaint and remand for further proceedings.
It may be that, as the district court theorized, even if Georgia once again obtains “cloudy” compounded pentobarbital it is possible that such a defective drug will not be used on Ms. Gissendaner. After all, the state’s doctor and pharmacist may again detect the problem and, as a result, Georgia officials might once again call off the execution. But that possible scenario does not' construe the allegations in the light most favorable to Ms. Gissendaner. *579 It is certainly fair to infer that if there is a problem with the supply of defective compounded pentobarbital (which Georgia’s doctor and pharmacist agreed was “not appropriate for medical use”) and Georgia has not been able to figure out what caused that problem, the problem is likely to recur. There is also no guarantee that a doctor or pharmacist will recognize the problem the next time, particularly if the compounded pentobarbital has an incorrect pH or is, despite its adulteration, only slightly cloudy. Ms. Gissendaner only had to allege enough to show the “substantive plausibility” of her Eighth Amendment claim, Johnson v. City of Shelby, — U.S. -, 135 S.Ct. 346, 346, 190 L.Ed.2d 309 (2014), and I think she did that here.
Similarly, the district court erred by ruling that Ms. Gissendaner had not alleged sufficient facts to show that Georgia would once again obtain defective compounded pentobarbital. Let me explain why.
For starters, the district court’s subsidiary rulings — that Ms. Gissendaner had not alleged that the pentobarbital on March 2 was necessarily defective or that its use on her would have caused needless suffering — are simply wrong. As to the first point, Ms. Gissendaner alleged that the compounded pentobarbital was cloudy, that the state’s doctor and pharmacist each concluded that it was “not appropriate for medical use,” that a lawyer for the state indicated that there was a problem with the batch that the dose came from, and that Georgia officials decided to stop the execution. If that is not enough to allege that the compounded pentobarbital on March 2 was defective, then I’ve completely misunderstood Twombly and Iqbal. As for the second point, Ms. Gissendaner quoted her medical expert, who opined that if the defective compounded pentobar-bital had been administered, she would have suffered severe and terrible pain. I cannot understand how or why that is insufficient to allege needless suffering.
Turning to the question of Georgia once again obtaining defective drugs, Ms. Gis-sendaner alleged that Georgia had not figured out what caused the problem on March 2, and that the state was not revealing the relevant documents which might explain exactly what had happened. It is certainly plausible to conclude, at the Rule 12(b)(6) stage, that if a state has received defective compounded drugs for use in an execution, does not know what caused the problem, and is choosing not to disclose what happened and how, the problem is likely to recur (at least until the problem is diagnosed or solved). Again, plausibility is not probability. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Cf. O’Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (“Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.”).
Georgia can certainly choose, as a matter of state law, to keep much of its execution protocol secret, but it cannot hide behind that veil of secrecy once something has gone demonstrably wrong with the compounded pentobarbital it has procured. See Wellons v. Comm’r, 754 F.3d 1260, 1267-68 (11th Cir.2014) (Wilson, J., concurring). It is not asking too much to require Georgia to put on some evidence that will provide some level of confidence that its compounded pentobarbital is no longer a problem.[2]
*580 B
To obtain a stay of execution, Ms. Gis-sendaner must show that she has a substantial likelihood of success on the merits, that she will suffer irreparable injury in the absence of a stay, that Georgia will not be substantially harmed from the grant of a stay, and that the stay would not be adverse to the public interest. See Valle v. Singer, 655 F.3d 1223, 1228 (11th Cir.2011). Our review of the district court’s denial of Ms. Gissendaner’s motion for stay of execution is of course deferential, see Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir.2011) (holding that denial of motion for stay of execution is reviewed for abuse of discretion), but an abuse of discretion can occur when a court uses the wrong legal standard or misapplies the correct legal standard. See, e.g., Glock v. Glock, Inc., 797 F.3d 1002, 1006 (11th Cir.2015). Here, as explained above, the district court failed to accept the complaint’s factual allegations as true and failed to take them in the light most favorable to Ms. Gissendaner. That misapplication of the Rule 12(b)(6) standard constituted an ' abuse of discretion.
That abuse of discretion, moreover, affected the district court’s denial of Ms. Gissendaner’s motion for stay of execution.' The first reason the district court gave for denying the stay was that it had dismissed the complaint, and as a result of that dismissal, Ms. Gissendaner could not show a substantial likelihood of success on the merits. See D.E. 41 at 3. At the very least, we should remand the matter to the district court for it to consider the motion for stay anew based on Ms. Gissendaner’s sufficient Eighth Amendment claim.[3]
The second reason the district court provided for denying the stay was that Ms. Gissendaner’s Eighth Amendment challenge was foreclosed by two Eleventh Circuit cases — Wellons and Gissendaner I. Id. at 4. I think the district court was mistaken in this respect, as these two decisions do not concern an as-applied challenge to Georgia’s one-drug execution protocol. In Wellons, where the challenge, a facial one, was to Georgia’s use of compounded pentobarbital, we held that “Wellon’s argument that the compounded pentobarbital may be defective or the personnel administering the execution may be untrained is insufficient to establish a substantial likelihood of success on the merits of his Eighth Amendment claim.” 754 F.3d at 1265. And in Gissendaner I we ruled that a similar facial claim was insufficient. 779 F.3d at 1283. Importantly, there were no allegations in Wellons or Gissendaner I that Georgia had in fact obtained a defective/adulterated sample of compounded pentobarbital for use in an execution (as it did on March 2), or that Georgia did not know what led to the problem with the compounded pentobarbital, or that Georgia was refusing to disclose what it had learned in its investigation of the problem. Those, of course, are the additional and critical allegations Ms. Gissen-daner now makes based on the events (and aftermath) of March 2.
*581 I offer one final thought. A death-row prisoner who is mounting a facial challenge to a state’s execution protocol must show not only that the protocol is sure to cause, or very likely to cause, serious illness and needless suffering, but als.o that “any risk of harm is substantial when compared to a known and alternative method of execution.” Glossip v. Gross, — U.S. -, 135 S.Ct. 2726, 2737-38, 192 L.Ed.2d 761 (2015). But where a prisoner like Ms. Gissendaner alleges that, based on recent experiences, a facially constitutional execution protocol is being carried out in an unconstitutional manner (e.g., that the state’s electric chair is malfunctioning, or that the state is getting defective compounded drugs for lethal injections), I do not think she is required to “identify an alternative method of execution.” See Bucklew v. Lombardi, 783 F.3d 1120, 1129 (8th Cir.2015) (en banc) (Bye, J., concurring in the result). We have differentiated between facial and as-applied challenges to execution protocols, see Siebert v. Allen, 506 F.3d 1047, 1049-50 & n. 3 (11th Cir.2007) (reversing denial of motion for stay of execution with respect to as-applied challenge, but affirming .denial with respect to facial challenge), and that makes sense to me. If a state merely has to fix a correctable problem to eliminate an as-applied challenge, there is no need for a prisoner to allege (or show) that a different alternative method of execution is available to the state.
Ill
As I read her complaint, Ms. Gissendaner has stated a sufficient and viable as-applied Eighth Amendment claim. I would therefore reverse the dismissal of the complaint and remand for the district court to reconsider Ms. Gissendaner’s motion for stay of execution.

. I agree with the majority that the district court properly dismissed the claim that Georgia officials violated the Eighth Amendment by leaving Ms. Gissendaner in a "state of uncertainty” for nearly 13 hours while it decided what to do after discovering the cloudy compounded pentobarbital.

. I recognize that, in response to the complaint, Georgia filed a number of affidavits and exhibits concerning its investigation into the events of March 2, but the district court made it clear at the hearing on September 28, 2015, that it was not considering any of those *580 filings under Rule 12(b)(6). I do not consider them either, and express no view on what they might or might not show concerning the current state of affairs.

. On remand, the district court could of course consider the affidavits and exhibits submitted by Georgia, as well as any other documents filed by Ms. Gissendaner, in evaluating the motion for stay of execution. The district court could also hold an evidentiary hearing and consider additional evidence presented by the parties on the issue of the compounded pentobarbital.