[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12663-P
_____

D.C. Docket No. 1:14-cv-01827-WBH

MARCUS A. WELLONS

Plaintiff - Appellant,

versus

COMMISSIONER,
GEORGIA DEPARTMENT OF CORRECTIONS,
et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 17, 2014)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Petitioner Marcus A. Wellons has appealed today from the district court's

denial of his 42 U.S.C. § 1983 action seeking a temporary restraining order, a stay

of his execution, a preliminary injunction, and a request for declaratory judgment.

He is scheduled to be executed by lethal injection today at 7:00 p.m. Upon thorough consideration of the parties' arguments and prevailing law, we find that Wellons has not established a substantial likelihood of success on the merits of his Eighth Amendment or other constitutional claims.

## I.    BACKGROUND

Wellons was convicted of the malice murder and rape of fifteen-year-old India Roberts on June 6, 1993. The Supreme Court denied his petition for writ of certiorari on direct appeal. *Wellons v. Georgia*, 519 U.S. 830, 117 S. Ct. 97 (1996).  Following denial of state habeas relief, Wellons filed a federal petition for writ of habeas corpus in the Northern District of Georgia, which was also denied. This court affirmed the denial of habeas relief, *Wellons v. Hall*, 554 F.3d 923 (11th Cir. 2006), but the Supreme Court granted his petition and remanded for further consideration,  *Wellons v. Hall*, 558 U.S. 220, 130 S. Ct. 727 (2010) (per curiam). After remanding Wellons's case to the district court for further proceedings consistent with the Supreme Court's opinion, we affirmed the district court's denial of Wellons's habeas petition.  *Wellons v. Warden*, 695 F.3d 1202 (2012). The Supreme Court denied Wellons's petition for writ of certiorari.  *Wellons v. Humphrey*, 134 S. Ct. 177 (2013).

Defendants have scheduled Wellons for execution on June 17, 2014. Following denial of his state appeals, Wellons filed a Section 1983 complaint

2

seeking a temporary restraining order and  stay of execution before the district court for the Northern District of Georgia.  Wellons also sought a declaratory judgment that Defendants' refusal to disclose information concerning the provenance of their lethal injection drugs and the qualification of their execution team violates his rights pursuant to the First, Fifth, Eighth and Fourteenth Amendments.  Wellons argues that Defendants have refused to disclose how they plan to execute him, relying upon Georgia's recent legislation that classifies all "identifying information" about a "person or entity who participates in or administers the execution of a death sentence . . . [or] that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment" used in an execution as a "confidential state secret" not subject to disclosure.  O.C.G.A. § 42-5-36(d) (effective July 1, 2013) (the "Lethal Injection Secrecy Act").

Wellons asserts that the only information Defendants have divulged concerning his execution is a copy of the lethal injection procedure that they adopted on July 17, 2012, which outlines a one-drug injection protocol of "pentobarbital."  Because Defendants have not had any FDA-approved pentobarbital in their possession since March of 2013, but have indicated that they obtained pentobarbital for this execution, Wellons argues that they may use a substance that purports to be pentobarbital, but that has been manufactured from unknown ingredients and in unknown circumstances by a compounding pharmacy.

3

Further, Wellons explains that the Supreme Court of Georgia has empowered Defendants to change their protocol at will and with no supervision or meaningful notice to the prisoner or public. *See Hill v. Owens*, 738 S.E. 2d 56 (Ga. 2013). Wellons presents several arguments for why his lack of knowledge about the drug that will be used at his execution violates his constitutional rights. First, he details the risks of using a compounded pentobarbital from an undisclosed source, arguing that it poses a substantial threat of undue pain and suffering. Second, Wellons argues that Oklahoma's recent botched execution of Clayton Lockett highlights the risks of Defendants' refusal to disclose the qualifications of the personnel who will administer Wellons's execution.

The district court held a hearing on June 16, 2014 on Wellons's claims regarding the provenance of the drugs to be used in his execution and the expertise of the personnel who will carry out the execution. The district court concluded that Wellons was not entitled to the declaratory or injunctive relief that he sought, and granted the Defendants' motion to dismiss Wellons's Section 1983 claims. Specifically, the district court found that Wellons's assertion that there may be a problem with the pentobarbital or that the person placing the intravenous lines into him may not be qualified to perform the task was mere speculation and "cannot substitute for evidence that the use of the drug is sure or very likely to cause serious illness and needless suffering." *Brewer v. Landrigan*, __ U.S. __ , 131 S.

4

Ct. 445 (2010) (quoting *Baze v. Rees*, 553 U.S. 35, 50, 128 S. Ct. 1520 (2008)); *see*

*Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir.), *cert. denied*, 133 S. Ct. 1752

(2013).

## II.    STANDARD OF REVIEW

A temporary restraining order or a stay of execution is appropriate only if

the movant demonstrates: "(1) a substantial likelihood of success on the merits; (2)

that the preliminary injunction is necessary to prevent irreparable injury; (3) that

the threatened injury outweighs the harm the preliminary injunction would cause

the other litigant; and (4) that the preliminary injunction would not be averse to the

public interest." *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1271 (11th Cir.),

*cert. denied* 134 S. Ct. 1156 (2014).

We review a district court's denial of a stay of execution for abuse of

discretion. *Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011) (per curiam);

*Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011) (per curiam).

## III.    DISCUSSION

### A. Statute of Limitations

As a preliminary matter, we note that the district court did not address

whether Wellons's § 1983 claims were time barred. Claims brought pursuant to 42

U.S. § 1983 are subject to the statute of limitations period governing personal

injury actions in the state where the action is brought. *Crowe v. Donald*, 528 F.3d

5

1290, 1292 (11th Cir. 2008).  In Georgia, the statute of limitations for tort actions is two years.  *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011).  This court has explained that a petitioner's "method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changes execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008).  In *Arthur v. Thomas*, we held that whether a significant change has occurred in a state's method of execution is a fact dependent inquiry.  674 F.3d 1257, 1260 (11th Cir. 2012) (remanding for a hearing to fully consider whether the change in Alabama's execution protocol constituted a "significant change" which would reset petitioner's statute of limitations).

Wellons argues that the Eighth Amendment entitles him to the information necessary to determine whether Georgia's method of execution is cruel and unusual.[1]  Defendants gave Wellons the 2012 Georgia Department of Correction Lethal Injection Protocol in May 2014, and Wellons concedes that Defendants have indicated that they have obtained pentobarbital for his execution. This 2012 protocol sets forth the state's one-drug lethal injection protocol of using five grams of pentobarbital administered by trained medical personnel, including a physician

---

[1] Wellons insists that he is not making a "method of execution" claim, but rather an Eighth Amendment challenge premised on his lack of information regarding the method and manner of his upcoming execution. As we see it, however, Wellons's challenge boils down to a method of execution challenge. *Cf. Powell v. Thomas*, 641 F.3d 1255, 1257-58 (11th Cir. 2011). For the purposes of this case, the statute of limitations analysis is the same.

and an IV nurse. However, because Defendants have not had any FDA-approved pentobarbital in their possession since March of 2013, Wellons believes that they will inject him with a compounded pentobarbital from an unknown manufacturer. Wellons appears to be arguing that Defendants will not follow their Legal Injection Protocol, or alternatively that changing from pentobarbital to a compound pentobarbital could constitute a "significant change" restarting the statute of limitations. *Arthur*, 674 F.3d at 1260. However, the Georgia Department of Corrections' anticipated use of an adulterated pentobarbital does not establish a "significant alteration in the method of execution." *See Mann*, 713 F.3d at 1314 (11th Cir. 2014) ("Because Mann cannot establish that the substitution of pentobarbital constituted a significant alteration to the method of execution in Florida, all of his claims not barred by res judicata are untimely."). Nor has Wellons alleged facts sufficient to show that Georgia's legal injection procedure has "substantially changed" based on the lethal injection secrecy act adopted by the Georgia legislature in March of 2013, which the Georgia Supreme Court has determined is constitutional. O.C.G.A. § 42-5-36; *see Owens v. Hill*, No. S14A0092, 2014 Ga. LEXIS 400 (Ga. May 19, 2014).

Therefore, Wellons last became subject to a substantially changed execution protocol in October 2001, when the Georgia Supreme Court declared that execution by electrocution violated the state constitution and directed any further

7

executions to be carried out by lethal injection. *Dawson v. State*, 554 S.E. 2d 137, 139 (2001); *see DeYoung*, 646 F.3d at 1324. Thus, it appears to us that the statute of limitations began to run in 2001 and has expired. Nevertheless, given the critical nature of Wellons's challenges and district court's treatment of Wellons's claims, we proceed to the merits of his claims as well.

### B. Wellons's Eighth Amendment Challenge

Wellons argues that the Eighth Amendment entitles him to the information required to determine whether Georgia's lethal injection procedure is cruel and unusual. Specifically, the use of pentobarbital from a compounding pharmacy can add an unacceptable risk of pain, suffering, and harm because compounding pharmacies are not subject to the FDA regulation. Wellons maintains that the lack of oversight can lead compounding pharmacies, even those operating in good faith, to make critical mistakes in the production of drugs. Wellons also argues that he has not been permitted to learn about the qualifications of the individuals who will carry out his execution and has presented evidence that if pentobarbital is injected improperly, it can cause serious chemical burns.

Wellons argues that the Supreme Court has not hesitated to recognize a due process right to the information necessary to determine whether an Eighth Amendment violation exists. *See Ford v. Wainwright*, 477 U.S. 399, 417–18, 106 S. Ct. 2595 (1986) (holding that Florida's procedures for determining sanity of a

8

death row prisoner were inadequate to afford a full and fair hearing on the issue and that the petitioner was entitled to an evidentiary hearing on the issue of his competence to be executed).  In short, Wellons insists that Defendants are denying the information necessary to determine whether his Eighth Amendment rights are being violated—while claiming not to implicate his rights at all.  Defendants insist, however, that Wellons's claim is speculative because he is arguing that the compounded pentobarbital *could* be imperfect, or that something *could* go wrong with the administration of the drug by prison personnel.  Defendants argue that just because an execution may inadvertently result in pain, this does not establish the "objectively intolerable risk of harm" necessary to establish an Eighth Amendment violation.  *Baze*, 553 U.S. at 51, 128 S. Ct. at 1531 (internal quotation marks omitted).

In order to prevail on an Eighth Amendment challenge, Wellons must demonstrate that the State is being deliberately indifferent to a condition that poses a substantial risk of serious harm to him.  Indeed, where an Eighth Amendment cruel and unusual punishment claim alleges the risk of future harm, "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Baze*, 553 U.S. at 50 (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34-35 (1993)). "In the lethal injection context, this standard requires an inmate to show an objectively

9

intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *DeYoung*, 646 F.3d at 1325 (internal quotations and citation omitted). A plaintiff must also show that the risk of severe pain is "substantial when compared to the known and available alternatives." *Baze*, 553 U.S. at 61.

The district court concluded that Wellons failed to establish a claim that the state has prevented him from asserting an Eighth Amendment claim, noting that state government officials are presumed to carry out their duties in a good-faith manner and in compliance with federal laws, citing *Alas. Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 507, 124 S. Ct. 983, 1013 (2004). The district court presumes that Defendants will act in good faith in selecting the pentobarbital and appointing the team that will carry out Wellons's execution. Accordingly, the district court concluded that Wellons's arguments were mere speculation which "cannot substitute for evidence that the use of the drug is sure or very likely to cause serious illness and needless suffering." *Landrigan*, 131 S. Ct. at 445 (internal quotation marks omitted).

Upon independent review, Wellons has not established that the trial court abused its discretion in denying the stay of his execution. We have held that speculation that a drug that has not been approved will lead to severe pain or suffering "cannot substitute for evidence that the use of the drug is sure or very

likely to cause serious illness and needless suffering." *Mann*, 713 F.3d at 1315.

Here, Wellons's argument that the compounded pentobarbital may be defective or

the personnel administering the execution may be untrained is insufficient to

establish a substantial likelihood of success on the merits of his Eighth

Amendment claim. *See, e.g.*, *Chavez*, 742 F.3d at 1272; *see also Mann*, 713 F.3d

at 1315 ("The Supreme Court has rejected the notion that the absence of approval

by the Administration is sufficient to establish a substantial risk of severe pain.");

*Sells v. Livingston*, No. 14-70014, 2014 WL 1316339 (5th Cir. Apr. 2, 2014)

("Plaintiff argues that because the State has transitioned to a new source for the

compounded pentobarbital, there are unknowns because of the possibility of

improper compounding or contamination. But plaintiff cannot rely on speculation

alone. Plaintiffs must point to facts or evidence based on science and fact showing

the likelihood of severe pain."), *cert. denied*, 134 S. Ct. 1787, 188 L. Ed. 2d 612

(2014); *In re Lombardi*, 741 F.3d 888, 896-97 (8th Cir. Jan. 24, 2014) ("Without a

plausible allegation of a feasible and more humane alternative method of

execution, or a purposeful design by the State to inflict unnecessary pain, the

plaintiffs have not stated an Eighth Amendment claim based on the use of

compounded pentobarbital. . . . As to the other claims raised by the plaintiffs, the

identities of the prescribing physician, pharmacist, and laboratory are plainly not

relevant."), *cert. denied*, 134 S. Ct. 1790 (2014) *and reh'g denied*, 741 F.3d 903

11

(8th Cir. 2014). Moreover, Wellons has "failed to show that any . . . alternative procedure or drug is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Mann*, 713 F.3d at 1315 (alteration in original) (quoting *Baze*, 553 U.S. at 52).

### C. Wellons's First, Fifth, and Fourteenth Amendment Challenges

Wellons maintains that due process entitles a person whose constitutional rights will be affected by state actions to, at minimum, both notice of those actions and an opportunity to be heard in a meaningful manner. *See Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994 (1972) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." (internal quotation marks omitted)).  Additionally, Wellons argues that Defendants' refusal to provide him with information regarding his execution denies him his First Amendment right of access to governmental proceedings.  Wellons maintains that the Supreme Court has guaranteed a qualified right of access to governmental proceedings, in order to "ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.,* 457 U.S. 596, 604, 102 S. Ct. 2613, 2619 (1982).  When determining whether the public has a First Amendment right of access to a particular governmental proceeding, reviewing courts must inquire into two "complementary

12

considerations": (1) "whether the place and process have historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9, 106 S. Ct. 2735, 2740 (1986). Wellons argues that both criteria are met. First, executions have historically been open events. Indeed, prior to Georgia's adoption of the Lethal Injection Secrecy Act, Wellons insists that Defendants would, in response to Open Records Act requests, provide prisoners and the public with detailed information about the drugs used in executions. Second, public access to information certainly plays a positive role in the functioning of capital punishment. Wellons insists that an informed public debate is critical in determining "'whether execution by lethal injection comports with the evolving standards of decency which mark the progress of a maturing society.'" *Cal. First Amendment Coalition v. Woodford*, 299 F.3d 868, 876 (9th Cir. 2002) (citing *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590 (1958)).

The district court concluded, however, that Wellons's due process claim was merely a restatement of his Eighth Amendment claims, and was too speculative to succeed on the merits. With respect to Wellons's First Amendment claim, the district court agreed with Defendants that while there may be First Amendment implications involved in the openness of government operations, the cases Wellons

13

relies upon turn on the public's, rather than the individual's, need to be informed so as to foster debate.  *See Pell v. Procunier*, 417 U.S. 817, 831, 94 S. Ct. 2800, 2808 (1974).  The district court determined that Wellons did not have a First Amendment right to access this information from Defendants.[2]

We agree with the judgment of the district court. Neither the Fifth, Fourteenth, or First Amendments afford Wellons the broad right "to know where, how, and by whom the lethal injection drugs will be manufactured," as well as "the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) ("[S]tatements [in *Bounds*] appear to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. . . .These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them." (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)); *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013) ("There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol."); *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011) (holding that the prisoners, who argued that the Arkansas Method of Execution Act violated the due process

---

[2] Although the district court did not explicitly cite Wellons's burden for achieving the injunctive relief he seeks, *see Chavez*, 742 F.3d at 1271, we interpret its conclusion as a finding that Wellons did not establish a substantial likelihood of success on the merits of his due process or First Amendment claims.

14

clause because its secrecy denied them "an opportunity to litigate" their claim that the execution protocol violated the Eighth Amendment, failed to state a plausible due process access-to-the-courts claim). Wellons has not established a substantial likelihood of success on the merits of his claim that the dearth of information regarding the nature of the pentobarbital that will be used in his execution and the expertise of those who will carry it out violates the First Amendment or his right to due process. This ground is also a sufficient basis to conclude that the district court did not abuse its discretion in concluding that Wellons is not entitled to injunctive relief on these claims.

## IV.    CONCLUSION

We conclude that the district court's determination, following an evidentiary hearing, to deny Wellons a stay of execution or a temporary restraining order was not an abuse of discretion.  Wellons's Motion for a Stay of Execution is **DENIED.**

WILSON, Circuit Judge, concurring in judgment:

With respect to Wellons's Eighth Amendment claim, I agree that the district court did not abuse its discretion in concluding that Wellons failed to show the likelihood of success on the merits required for injunctive relief.  However, I write separately to highlight the disturbing circularity problem created by Georgia's secrecy law regarding methods of execution in light of our circuit precedent.

We explained in *Mann v. Palmer* that "[a]fter *Baze*, an inmate who seeks a stay of execution must establish that the lethal injection protocol of his state creates a *demonstrated* risk of severe pain that is substantial when compared to the *known alternatives*."  713 F.3d 1306, 1315 (11th Cir. 2013) (emphasis added).  Although Wellons insists that his is not a "method of execution" claim, in order to succeed under the Eighth Amendment, he must show that the manner in which Georgia intends to execute him generates "a substantial risk of serious harm or an objectively intolerable risk of harm."  *Baze v. Rees*, 553 U.S. 35, 51, 128 S. Ct. 1520, 1532 (2008) (internal quotation marks omitted).  Possibly due to his lack of information about the compound pentobarbital that will be used and the expertise of the people who will administer his execution, Wellons has not shown such a risk.  Indeed, how could he when the state has passed a law prohibiting him from learning about the compound it plans to use to execute him?  Although Wellons has been given the 2012 Lethal Injection Protocol which indicates that

16

pentobarbital will be used, he also knows that Defendants have not had any FDA-approved pentobarbital in their possession since March of 2013, and thus can only assume they will be using a substance that purports to be pentobarbital but has been manufactured from unknown ingredients and in unknown circumstances by a compounding pharmacy. Without additional information about the method of his execution, it seems nearly impossible for Wellons to make the argument that Defendants' planned execution creates an "objectively intolerable risk of harm." *Id.*

Similarly, while I agree that Wellons has not provided sufficient support for his general due process or First Amendment claim, I have serious concerns about the Defendants' need to keep information relating to the procurement and nature of lethal injection protocol concealed from him, the public, and this court, especially given the recent much publicized botched execution in Oklahoma. Unless judges have information about the specific nature of a method of execution, we cannot fulfill our constitutional role of determining whether a state's method of execution violates the Eighth Amendment's prohibition against cruel and unusual punishment before it becomes too late.