[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10277

_____

D.C. Docket No. 1:15-cv-04445-CAP


BRANDON ASTOR JONES,

Plaintiff - Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON,
OTHER UNKNOWN EMPLOYEES AND AGENTS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before MARCUS, WILSON and WILLIAM PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

In this capital case, Brandon Astor Jones appeals from the district court's
recent order dismissing his civil rights complaint challenging Georgia's method of
execution as violating the Fifth, Eighth, and Fourteenth Amendments. Jones's

execution is currently scheduled for **February 2, 2016 at 7:00 p.m. EST**. Just a week before the scheduled execution, Jones petitioned our full Court for initial en banc review of that appeal; he also contemporaneously moved us for an emergency stay of execution. Although the petition for en banc review is now pending before the full Court, the application for a stay was filed with the panel, not the en banc court, and under our Local Rules, the emergency motion for stay is properly before the three-judge panel assigned to this case. See 11th Cir. R. 35-4 ("A petition for rehearing en banc tendered with respect to [an order ruling on a request for stay] will not be considered by the court en banc, but will be referred as a motion for reconsideration to the judge or panel that entered the order sought to be reheard.").[1]

In his § 1983 complaint -- just filed on December 22, 2015, in the Northern District of Georgia -- Jones alleged that Georgia's method of execution amounts to cruel and unusual punishment in violation of the Eighth Amendment, and that Georgia's Lethal Injection Secrecy Act, O.C.G.A. § 42-5-36, deprives him of the information necessary to challenge its lethal injection protocol, in violation of his due process rights embodied in the Fifth, Eighth, and Fourteenth Amendments.[2]

---

[1] At the time this opinion has issued, the en banc Court has not issued an order granting or denying the petition for hearing en banc. The motion for stay is not moot.

[2] Georgia's lethal injection secrecy statute provides:

> The identifying information of any person or entity who participates in or administers the execution of a death sentence and the identifying information of any person or entity that manufactures, supplies, compounds, or prescribes the

2

The district court dismissed the complaint in its entirety because, it ruled, Jones's claims were barred by binding Circuit precedent. In this emergency motion, Jones says that he seeks a stay of execution pending the full Court's resolution of his en banc petition. He seeks en banc review over the following question:

> Does Georgia's lethal injection secrecy act violate Mr. Jones's Fifth, Eighth, and Fourteenth Amendment rights?

Notably, Jones has not challenged in either his petition for en banc review or in the motion for stay the district court's dismissal of his Eighth Amendment method-of-execution claim.[3]

## I.

It is by now axiomatic that a court may grant a stay of execution only if the moving party establishes that: "(1) he has a substantial likelihood of success on the

---

drugs, medical supplies, or medical equipment utilized in the execution of a death sentence shall be confidential and shall not be subject to disclosure under Article 4 of Chapter 18 of Title 50 or under judicial process. Such information shall be classified as a confidential state secret.

O.C.G.A. § 42-5-36(d)(2); see id. § 42-5-36(d)(1) (defining "identifying information" as "any records or information that reveals a name, residential or business address, residential or business telephone number, day and month of birth, social security number, or professional qualifications").

[3] The remaining background and procedural history of this case have been laid out most recently and at some length in Jones v. GDCP Warden, __ F.3d __ (11th Cir. Jan. 28, 2016). There, we just denied Jones's motion to recall the mandate in his prior habeas case, Jones v. GDCP Warden, 753 F.3d 1171 (11th Cir. 2014), and his motion for stay of execution based on the motion to recall. On January 27, 2016, Jones filed a successive habeas corpus petition in state court arguing that his sentence is unconstitutionally disproportionate and excessive in violation of the Eighth and Fourteenth Amendments. That claim has not been filed in federal court. Jones also filed an accompanying motion for stay of execution in state court. On January 29, 2016, Georgia's superior court denied both motions.

3

merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." See Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011). "[T]he equitable principles at issue when inmates facing imminent execution delay in raising their . . . challenges are equally applicable to requests for both stays and injunctive relief" which are "not available as a matter of right." Williams v. Allen, 496 F.3d 1210, 1212-13 (11th Cir. 2007) (internal quotations omitted). "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Hill v. McDonough, 547 U.S. 573, 584 (2006).

After careful review, we deny Jones's emergency motion for stay because he has not shown a substantial likelihood of success on the merits and the equities counsel against imposing the stay.

## A.

We begin with the first and most important question concerning a stay: whether Jones has shown a substantial likelihood of success on the merits of his due process claim. Our binding precedent forecloses Jones's due process claim, and thus Jones cannot show a substantial likelihood of success. See Terrell v. Bryson, 807 F.3d 1276 (11th Cir. 2015); Wellons v. Comm'r, Ga. Dep't of Corr.,

4

754 F.3d 1260 (11th Cir. 2014). In <u>Wellons</u>, a prisoner argued that "the dearth of information regarding the nature of the pentobarbital that will be used in his execution and the expertise of those who will carry it out violates the First Amendment [and] his right to due process." 754 F.3d at 1267. Relying on Supreme Court precedent, a panel of this Court held that "[n]either the Fifth, Fourteenth, or First Amendments afford [a prisoner] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." <u>Id.</u> at 1267 (quotations omitted). The Supreme Court denied a petition for certiorari. <u>Wellons v. Owens</u>, 134 S. Ct. 2838 (2014). We reapplied this holding and rejected another identical claim in <u>Terrell</u>, 807 F.3d at 1276, and again the Supreme Court denied certiorari, <u>Terrell v. Bryson</u>, No. 15-7282, 577 U.S. _____ (Dec. 8, 2015).

Under our Circuit's prior precedent rule, we are bound to follow a prior binding precedent "unless and until it is overruled by this court en banc or by the Supreme Court." <u>United States v. Vega-Castillo</u>, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotation omitted). Jones has not argued that <u>Wellons</u> conflicts with any of our decisions or those of the Supreme Court. His claim is foreclosed by our precedent and he cannot succeed on the merits.

5

Moreover, no other circuit court has ever recognized the kind of due process right-of-access claim that Jones now asserts, and the two other circuit courts of appeal that have faced similar challenges to this kind of state secrecy law have each squarely rejected the claim twice. See Zink v. Lombardi, 783 F.3d 1089, 1109 (8th Cir. 2015), cert. denied, 135 S. Ct. 2941 (2015) ("We agree with the Eleventh and Fifth Circuits that the Constitution does not require such disclosure. A prisoner's 'assertion of necessity -- that [the State] must disclose its protocol so he can challenge its conformity with the Eighth Amendment -- does not substitute for the identification of a cognizable liberty interest.'" (citations omitted)); Trottie v. Livingston, 766 F.3d 450, 452 (5th Cir. 2014), cert. denied, 135 S. Ct. 41 (2014) ("A due process right to disclosure requires an inmate to show a cognizable liberty interest in obtaining information about execution protocols. Trottie speculates that there are unknowns regarding the drug to be used which may add an unacceptable risk of pain and suffering. However, we have held that an uncertainty as to the method of execution is not a cognizable liberty interest."); Sepulvado v. Jindal, 729 F.3d 413, 420 (5th Cir. 2013) ("There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol."); Williams v. Hobbs, 658 F.3d 842, 852 (8th Cir. 2011) (holding that the prisoners, who argued that the Arkansas Method of Execution Act violated the due process clause because its secrecy denied them "an

6

opportunity to litigate" their claim that the execution protocol violated the Eighth Amendment, failed to state a plausible due process access-to-the-courts claim).[4]

Jones has not identified any cognizable liberty interest infringed by the Georgia secrecy law nor has he even begun to describe the framework for analyzing this novel constitutional right. Jones challenges the Georgia statute pursuant to 42 U.S.C. § 1983, which "is not itself a source of substantive rights" and requires Jones to "identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). The sole question Jones presents in this motion for stay -- and indeed the only one for which he seeks initial en banc review -- is whether Georgia's secrecy law violates his claimed Fifth and Fourteenth Amendment rights "to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters," Wellons, 754 F.3d at 1267 (quotations omitted), so that he may effectively challenge Georgia's lethal injection protocol. While his complaint in the district court alleged an Eighth Amendment challenge to Georgia's method of execution as

---

[4] We recognize that the Ninth Circuit addressed a similar claim in Wood v. Ryan, 759 F.3d 1076, 1077-78 (9th Cir.), vacated, 135 S. Ct. 21 (2014). There, the prisoner sought information from the Arizona Department of Corrections regarding the method of his execution, and argued that by withholding this information, the Department had violated his First Amendment rights. The district court denied a preliminary injunction, and the Ninth Circuit reversed, concluding that "Wood has presented serious questions going to the merits of his claim." Id. However, the Supreme Court promptly reversed that decision, without opinion or dissent, and granted the state's application to vacate the judgment. Ryan v. Wood, 135 S. Ct. 21 (mem) (2014).

7

well as a separate challenge to the secrecy statute based on due process, he has not appealed from the district court's dismissal of the Eighth Amendment claim.

With the companion Eighth Amendment claim no longer at issue on appeal, all we have before us is Jones's stand-alone claim that Georgia's secrecy statute infringes his ability to "discover grievances, and to litigate effectively once in court" -- a right the Supreme Court has told us the Constitution does not guarantee to him.  See Lewis v. Casey, 518 U.S. 343, 354 (1996).  Having untethered the Eighth Amendment claim from this appeal, Jones has no claim that implicates any constitutional right.  Thus, in challenging the Georgia secrecy statute, Jones has failed to state a claim that § 1983 can redress.

B.

But even if we were to also consider Jones's Eighth Amendment method-of-execution challenge -- which was dismissed by the district court and is not a part of his appeal -- in deciding whether to grant a stay, there is still a fatal flaw in that claim: he has failed to adequately plead, let alone show a substantial likelihood, that there is an "alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain."  Glossip v. Gross, 135 S. Ct. 276, 2737 (2015) (quotation omitted and alteration adopted); see also Baze v. Rees, 553 U.S. 35, 50, 52 (2008) (plurality opinion)).  The Supreme Court has recently reiterated the elements of an Eighth Amendment method-of-execution

challenge and the necessary showing a prisoner must make to receive a stay of execution:

> [P]risoners cannot successfully challenge a method of execution unless they establish that the method presents a risk that is " 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.' " To prevail on such a claim, "there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.' " . . . [P]risoners "cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." Instead, prisoners must identify an alternative that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."
>
> [T]he requirements of an Eighth Amendment method-of-execution claim [are summarized] as follows: "A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. [And] [h]e must show that the risk is substantial when compared to the known and available alternatives." The preliminary injunction posture of the present case thus requires petitioners to establish a likelihood that they can establish both that [the State's] lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives.

Glossip, 135 S. Ct. at 2737 (2015) (citations omitted). Thus, prisoners seeking a stay must "establish a likelihood that they can establish" both that (1) the protocol creates a "sure or very likely" risk of causing "serious harm," and (2) this risk is substantial when compared to the known and available alternatives.

Jones's complaint ignores the second element, alleging only at the highest order of abstraction that Georgia could "obtain their drugs from a different source."

9

This conclusory allegation about an alternate source for the drugs does not provide "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint is insufficient to satisfy Jones's pleading burden under Federal Rule of Civil Procedure 8, which required him to "plead[] factual content that allows the court to draw the reasonable inference," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), that Georgia has access to a "feasible, readily implemented" alternative source of pentobarbital, Glossip, 135 S. Ct. at 2737. And because we are considering Jones's motion to stay, he is also required to present some body of evidence showing a substantial likelihood that he would ultimately be able to prove this element. He has provided us with nothing on this point. Having failed to adequately allege, let alone provide factual support for the second element of his Eighth Amendment claim, Jones has not shown a substantial likelihood that he will succeed on the merits of his Eighth Amendment claim.

C.

Jones's application for stay encounters a third even more basic problem. Even if we were to assume that Jones has some due process right to effectively discover and litigate a potential Eighth Amendment violation -- which, as we've explained, no court has ever sanctioned -- there is a serious and substantial

10

question about whether the Georgia statute has caused any harm to that right and, therefore, whether Jones even has standing to challenge the statute.

In order to establish Article III standing, "a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997) (quotations omitted) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (quotation omitted); E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 983 (11th Cir. 1990). "In fact, we are obliged to consider standing sua sponte even if the parties have not raised the issue because an appellate court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007) (quotation omitted).

We do not see how Jones can claim "an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," Lujan, 504 U.S. at 560 (quotations and citations omitted) -- by operation of the Georgia statute. The Georgia secrecy law

11

has not prevented him from identifying an alternative source of pentobarbital that was "feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain" -- a requirement plainly prescribed by the Supreme Court in Glossip, 135 S. Ct. at 2737, and Baze, 553 U.S. at 52, as a necessary predicate to any Eighth Amendment method-of-execution claim. The Georgia statute only protects information about the specific drug sources Georgia actually is using and identifying information about any person or entity who participates in the execution of a death sentence. See O.C.G.A. § 42-5-36(d). It does not deprive Jones of the ability to locate an alternative source.

Because the Georgia secrecy statute has not likely injured Jones by preventing him from pleading an otherwise valid Eighth Amendment claim, we do not see how Jones has shown an injury in fact. Thus, on this record, granting Jones the ultimate relief he seeks -- declaring that statute unconstitutional and fashioning a new, freestanding constitutional right of access to discovery -- would not bring him redress because that statute did not injure his ability to satisfy Glossip's requirements in the first place. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998). Without a concrete, particularized injury traceable to the Georgia

statute, we have real doubt about the justiciability of Jones's abstract access to information claim.

## II.

Jones is not entitled to a stay of execution for still another reason: the equities are not in his favor. Injunctive relief, including a stay of execution, is an equitable remedy that is not available as a matter of right. Brooks v. Warden, __ F.3d __, 2016 WL 212427, at *9 (11th Cir. Jan. 19, 2016), cert. denied sub nom. Brooks v. Dunn, No. 15-7787, 2016 WL 235248 (U.S. Jan. 21, 2016). As the Supreme Court has recognized, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." Hill, 547 U.S. at 584. We are particularly reluctant to interfere in Georgia's enforcement of the death penalty since its current protocol -- using compounded pentobarbital provided by an undisclosed source -- has actually been used at least seven times in the last year, without incident. See Terrell, 807 F.3d at 1279 (Marcus, J., concurring). Moreover, when Georgia suspected there was a problem with its two batches of "cloudy" drugs last spring, it postponed the scheduled executions until it could look into the matter. Id. There has been no claim that Georgia has encountered cloudy drugs since, nor that it has ever used contaminated drugs in an execution. Georgia also complied with the Open Records Act in providing Jones with its analysis, the drug logs, and its testing

results. In fact, in the most recent challenge to Alabama's lethal injection protocol -- which uses three drugs, none of which are pentobarbital -- the prisoner argued that the state should be using a single-injection protocol of compounded pentobarbital, the very thing that Georgia uses. See Brooks, 2016 WL 212427, at *5.

Jones, for his part, has waited an awfully long time to ask this Court to stay his execution. The Supreme Court has unanimously instructed the lower federal courts on multiple occasions that we must apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such time as to allow consideration of the merits without requiring entry of a stay." Hill, 547 U.S. at 584 (quoting Nelson v. Campbell, 541 U.S. 637, 650 (2004)). Jones's challenge to Georgia's secrecy law amounts to a claim that could have easily been brought long ago, but for reasons unknown to us, he did not do so.

Jones's execution is set for this Tuesday, February 2, 2016 -- thirty-six years after the murder and first death sentence was imposed, nineteen years after the second death sentence was imposed and fifteen years after it became final, seven years after Jones filed his current federal habeas petition, and thirteen months after we issued our mandate denying habeas relief in his original habeas case. Even more significant, Jones's specific challenge in this stay application is to Georgia's secrecy act, which was enacted thirty-four months ago in March 2013, and went

14

into effect four months later.  And even if his challenge was sparked by the spring 2015 discovery of the cloudy pentobarbital, that incident was made known as early as March 2, 2015.  See Gissendaner v. Bryson, petition for cert. at 3, No. 14-8647 (U.S. Mar. 9, 2015) ("[O]n March 2, 2015 . . . Ms. Gissendaner's lawyers received a telephone call from . . . counsel for Respondents, who informed them that the execution would not go forward that evening because Respondents' drugs were 'cloudy.'").  Indeed, Gissendaner filed a new challenge to Georgia's protocol -- based on the March 2 discovery -- on March 9, 2015.

Yet during all of that time, Jones did nothing to challenge Georgia's execution protocol or its secrecy statute, even though nothing prevented him from filing his § 1983 action anytime over the last three years, or even over the last year.[5]  Instead, Jones waited to file this § 1983 action in federal district court until

---

[5]    To the extent the claim has been made that prisoners under sentence of death face a "catch-22," because if they are required to challenge execution protocols in a timely manner, then the protocols may change by the time of their execution date, we remain unpersuaded. Jones has not raised a method-of-execution challenge on appeal, but rather a stand-alone due process challenge to Georgia's secrecy law.  That law went into effect two-and-a-half years ago. If Jones -- who was already under sentence of death at the time -- had a right to access the information protected by the Georgia secrecy statute, as he claims, that right was infringed when the law went into effect, and could have been challenged then.

But even if Jones's petition is viewed as also having raised a method-of-execution challenge, rather than just a claim about access to discovery, Jones faced no "catch-22" in being required to assert his Eighth Amendment claims or lose them.  If Jones had asserted his Eighth Amendment challenge and then Georgia changed its execution protocol, he would have suffered no prejudice because, if he was still concerned about a new protocol, he could have amended his complaint or filed a new civil rights action.  A far cry from a "catch-22," timely challenges to a state's method of execution benefit both the state and its inmates.  We can perceive no drawback to the prisoner.

15

December 22, 2015. The district court dismissed the action on January 21, 2016; and he did not file a notice of appeal with this Court until January 25, 2016, at which point he moved this Court for a stay of execution and also petitioned the Court to initially hear the case <u>en banc</u>. While each death case is very important and deserves our most careful consideration, the fact that Jones has petitioned us for a stay of execution only at the very last moment, and without adequate explanation, also suggests to us that the equities do not lie in his favor.

The long and the short of it is that Jones cannot meet his burden for a stay. Accordingly, his motion is denied.

**DENIED**.

WILSON, Circuit Judge, dissenting:

I do not believe that this court has jurisdiction to deny Brandon Jones's request for a stay. Moreover, I disagree with the Majority's conclusions that Jones has not shown a substantial likelihood of success on the merits and that the equities counsel against imposing a stay. Therefore, I respectfully dissent.

First, Jones's request for a stay is moot. Jones requested a stay pending this court's decision on whether to consider his challenge to Georgia's Lethal Injection Secrecy Act en banc, and, understanding that an en banc hearing will not take place, this court's decision to issue an opinion denying the motion is unnecessary.

Second, for the reasons discussed in my forthcoming dissent to this court's denial of Jones's request for an en banc hearing, I believe that Georgia's Lethal Injection Secrecy Act violates his right to due process under the Fifth, Eighth, and Fourteenth Amendments. The fact that Jones did not appeal the district court's decision on his Eighth Amendment method-of-execution claim does not doom his due process claim. Contrary to the Majority's assertions, Jones's decision not to appeal the district court's dismissal of the method-of-execution claim does not untether his due process challenge to the Secrecy Act from that claim. Jones argues in his briefing that without access to information protected by the Secrecy Act, his method-of-execution claim is foreclosed. In other words, Jones's due process claim is inextricably intertwined with his method-of-execution claim. In

17

light of this close relationship, if we find the Secrecy Act unconstitutional, then we have discretion to vacate and remand to allow the district court to consider Jones's method-of-execution claim. *See* 28 U.S.C. § 2106. Thus, Jones has stated a claim involving imminent injury: the Secrecy Act violates his due process rights by preventing him from pursuing his method-of-execution claim.

Finally, I find the Majority's arguments regarding the equities wholly unpersuasive, especially considering the recent factual and legal developments relevant to Georgia's lethal injection process and method-of-execution claims.

For these reasons and those to follow in my dissent from the denial of Jones's request for an en banc hearing, I dissent.

18