[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12948
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-02582-RWS

RICHARD JORDAN,
RICKY CHASE,

Plaintiffs-Appellants,

versus

COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Defendant,

GEORGIA DEPARTMENT OF CORRECTIONS,

Movant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 19, 2018)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

Plaintiffs Richard Jordan and Ricky Chase, Mississippi death row inmates, served the Georgia Department of Corrections ("GDC") with a subpoena directing the GDC to testify at a Rule 30(b)(6) deposition and to produce documents concerning Georgia's lethal injection protocol. Plaintiffs argued that the testimony and documents were necessary to support their 42 U.S.C. § 1983 claims pending in the Southern District of Mississippi challenging the legality of Mississippi's lethal injection protocol. The GDC filed a motion to quash in the Northern District of Georgia, where compliance with the subpoena was required. Accepting the recommendation of a Magistrate Judge, the district court granted the motion to quash. Plaintiffs appeal, arguing that the district court did not apply the correct standard of review to the Magistrate Judge's ruling, and also that the motion to quash should have been denied on the merits. After careful review, we affirm.

## BACKGROUND

This appeal is an offshoot of a § 1983 action filed by Plaintiffs in the Southern District of Mississippi. Plaintiffs are Mississippi death row inmates who have filed a § 1983 complaint in the Southern District of Mississippi in which they challenge the constitutionality of Mississippi's lethal injection protocol. Mississippi's protocol recently was changed from a single injection procedure

2

using only sodium pentothal or pentobarbital to a three-drug procedure that requires the serial injection of: (1) either compounded pentobarbital or midazolam (a sedative/anesthetic), (2) vecuronium bromide (a paralytic), and (3) potassium chloride (which stops the heart). According to Plaintiffs, there is a substantial risk that neither compounded pentobarbital nor midazolam—the first drug in the series—will sufficiently anesthetize the condemned inmate. Consequently, Plaintiffs claim, an inmate who is injected with either drug could remain conscious and fully sensate and thus experience suffocation when the second drug in the series—the paralytic vecuronium bromide, which renders the inmate unable to breathe—is administered. Compounding this issue, Plaintiffs contend, vecuronium bromide prevents all muscular movement and thus masks the pain that potassium chloride—the third and final drug in the series—is known to inflict in the absence of adequate anesthesia. Plaintiffs argue that Mississippi's three-drug lethal injection protocol thus creates an unacceptable risk of severe and unnecessary pain, in violation of the Eighth Amendment.

To prevail on their Eighth Amendment claims, Plaintiffs must show that there is an alternative to Mississippi's three-drug protocol that is both "known and available" and that significantly reduces the risk of severe pain to the inmate. *See Glossip v. Gross*, 135 S. Ct. 2726, 2738 (2015). In an effort to meet that burden, Plaintiffs point to alternative lethal injection protocols used by other states,

3

including Georgia.  The GDC has used a one-drug protocol that requires a single injection of compounded pentobarbital in its most recent executions.  Plaintiffs argue that a single injection of pentobarbital is thus a known and available alternative to Mississippi's three-drug protocol, which (theoretically, at least) reduces the risk of pain to the condemned inmate.

The Mississippi defendants[1] dispute this point, and they have asserted at various times in the underlying § 1983 action that pentobarbital, even in its compounded form, is unavailable for their use in executions.  For example, in their answer to Plaintiffs' complaint, the Mississippi defendants denied that a single-drug procedure using pentobarbital was a feasible alternative to Mississippi's three-drug protocol.  They subsequently filed a motion to dismiss Plaintiffs' § 1983 action under *Glossip*, citing the sworn testimony of Mississippi Department of Corrections officials stating that they had tried but been unable to find a source of pentobarbital for use in executions.  In a hearing on the motion, the attorney for the Mississippi defendants emphasized that state corrections officials had not been able to obtain pentobarbital for use in executions in spite of a diligent search.

Plaintiffs acknowledge that pentobarbital has become difficult to acquire, at least in part because death penalty opponents have lobbied drug manufacturers to

---

[1] The Mississippi defendants include the Commissioner of the Mississippi Department of Corrections and various other state officials who are involved in implementing executions in Mississippi and who have been named in Plaintiffs' § 1983 complaint.

4

make it unavailable for use in American executions.  But Plaintiffs have argued in their § 1983 action that it must be possible to obtain pentobarbital by some means, because states like Georgia continue to use it.  Seeking evidence to shore up that argument, Plaintiffs served the GDC with the non-party subpoena that is at issue in this appeal.  The subpoena directs the GDC to appear at a Rule 30(b)(6) deposition and to produce documents concerning the feasibility of a one-drug lethal injection protocol using pentobarbital, including specific details about the GDC's source and manner of acquiring pentobarbital.

The GDC filed a motion to quash the subpoena in the Northern District of Georgia, arguing that the information sought in the subpoena was irrelevant to the claims asserted in the underlying § 1983 litigation and, in any event, protected from disclosure by Georgia's Lethal Injection Secrecy Act and other privileges.  The motion was referred to a Magistrate Judge, who rejected the GDC's relevancy argument but nevertheless granted the motion to quash pursuant to the Lethal Injection Secrecy Act.  The Lethal Injection Secrecy Act precludes the disclosure of the "identifying information" of any person or entity that participates in a Georgia execution or that supplies the drugs used by the state in executions.  *See* O.C.G.A. § 42-5-36(d).  The Magistrate Judge concluded that this Court's "expansive reading" of the Act barred the disclosure of the information sought in the subpoena that Plaintiffs had served on the GDC.

5

Plaintiffs filed objections to the Magistrate Judge's ruling, in which they argued that the information sought by the subpoena was not privileged, and that the Magistrate Judge had erroneously failed to require the GDC to produce a privilege log specifying in detail how the Lethal Injection Secrecy Act applies to each requested document.  After reviewing those objections, the district court accepted and adopted the Magistrate Judge's decision to quash the subpoena.  First, the district court determined that the "clearly erroneous" or "contrary to law" standard applied to its review of the Magistrate Judge's ruling because the motion to quash was a non-dispositive pretrial matter.  Then, emphasizing that this Court had held numerous times that the Lethal Injection Secrecy Act precluded disclosure of similar information to a condemned inmate, the district court concluded that the Magistrate Judge's ruling was neither clearly erroneous nor contrary to law.

Plaintiffs appeal, arguing that (1) the district court applied the wrong standard of review to the Magistrate Judge's ruling and (2) the motion to quash should have been denied on the merits.

## STANDARD OF REVIEW

We review the district court's ruling on the GDC's motion to quash "only for an abuse of discretion."  *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015) (citing *Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir. 1982)).  Thus, we will leave the district court's ruling on the motion "undisturbed" unless the district court has

6

"made a clear error of judgment, or has applied the wrong legal standard."

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005);

*see also SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325,

1333 (11th Cir. 1996) (noting that an abuse of discretion occurs when the district

court makes "a clear error of judgment" or applies "an incorrect legal standard"

(internal quotation marks omitted)).

## DISCUSSION

**I.      The district court applied the correct standard of review to the Magistrate Judge's ruling on the motion to quash.**

As discussed, the district court reviewed the Magistrate Judge's ruling on the

motion to quash under the "clearly erroneous" or "contrary to law" standard.

According to Plaintiffs, the district court should have reviewed the Magistrate

Judge's ruling de novo, and its failure to do so requires reversal under the Federal

Magistrate's Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil

Procedure.

The standard of review the district court was required to apply depends on

whether we characterize the GDC's motion to quash as a dispositive or a non-

dispositive matter.  *See* Fed. R. Civ. P. 72.  Under the Federal Magistrate's Act, a

district court "may designate a magistrate judge to hear and determine any pretrial

matter pending before the court."  28 U.S.C. § 636(b)(1)(A).  If the matter is non-

dispositive, the district court reviews the magistrate judge's ruling under the

7

"clearly erroneous or contrary to law" standard.  *Id.*; *see also* Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide . . . . [t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  But if the matter is dispositive, the district court must review any objected-to portion of the magistrate judge's ruling de novo.  28 U.S.C. § 636(b)(1).

The Federal Magistrate's Act lists several examples of motions that qualify as dispositive matters, including motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment, to suppress evidence in a criminal case, to dismiss or permit maintenance of a class action, to dismiss for failure to state a claim, and to involuntarily dismiss an action.  *Id.*  As evidenced by the motions included in this list, a routine pretrial discovery motion, such as the motion to quash at issue in this case, generally would not be considered a dispositive matter.  *See In re Comm'r*'s *Subpoenas*, 325 F.3d 1287, 1292 n.2 (11th Cir. 2003) ("The district court correctly observed that the standard of review by which it reconsidered the magistrate judge's [order quashing subpoenas] is 'clearly erroneous or contrary to law.'" (citing 28 U.S.C. § 636(b)(1)(A))), *overruled on other grounds by Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); *Maynard v. Bd. of Regents of the Div. of Univ. of the Fla. Dep't*

8

*of Ed.*, 342 F.3d 1281, 1286 (11th Cir. 2003) (characterizing a magistrate judge's discovery rulings as non-dispositive orders, and holding that the plaintiff's failure to object to the rulings in the district court waived his right to appeal them).

Indeed, Plaintiffs do not dispute that if the GDC's motion to quash had been filed in the Southern District of Mississippi, where the underlying § 1983 action is pending, the motion would be considered non-dispositive and a magistrate judge's ruling on it would be reviewed under the clearly erroneous or contrary to law standard. Yet, Plaintiffs argue that the Magistrate Judge's ruling on the motion to quash filed in this particular case should be considered dispositive—and thus reviewed under the de novo standard—because it resolves and finally disposes of the litigation between Plaintiffs and the GDC that is pending in the Northern District of Georgia.

We are not persuaded by this argument. The GDC's motion to quash required separate litigation between Plaintiffs and the GDC in the Northern District of Georgia because the place for compliance with the subpoena, and thus the proper venue for filing a motion to quash, was in the Northern District of Georgia. *See* Fed. R. Civ. P. 45(c), (d)(3). And the Magistrate Judge's ruling on the motion resulted in a final disposition of the issues raised in the motion, permitting Plaintiffs to appeal the ruling to this Court. *See Ariel*, 693 F.2d at 1059 (noting that a litigant would have "no other means of effectively obtaining review" of such

a ruling if it were not considered final for purposes of appeal). But that does not change the essential nature of the motion to quash from a routine pretrial discovery motion, which is ancillary to the § 1983 litigation pending in the Southern District of Mississippi, to a dispositive matter.

In short, we find no reason to treat the Magistrate Judge's ruling on the GDC's motion to quash any differently than we would treat a similar pretrial discovery motion that was filed in the Southern District of Mississippi, where the underlying § 1983 action is pending. As such, we conclude that the district court correctly applied the "clearly erroneous or contrary to law" standard of review to the Magistrate Judge's ruling on the motion to quash. *See In re Comm'r's Subpoenas*, 325 F.3d at 1292 n.2.

## II.    The district court did not abuse its discretion by accepting and adopting the Magistrate Judge's ruling and granting the GDC's motion to quash.

Having concluded that the district court applied the correct standard of review, the only question for this Court is whether the district court otherwise abused its discretion—either by relying on an error of law or committing a clear error of judgment—in affirming the Magistrate Judge's ruling granting the GDC's motion to quash. *See Ameritas Variable Life Ins.*, 411 F.3d at 1330. Clearly, it did not.

10

As discussed, the Magistrate Judge concluded that disclosure of the information sought in the GDC subpoena was precluded by Georgia's Lethal Injection Secrecy Act. The Lethal Injection Secrecy Act states that:

> The identifying information of any person or entity who participates in or administers the execution of a death sentence and the identifying information of any person or entity that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment utilized in the execution of a death sentence shall be confidential and shall not be subject to disclosure . . . under judicial process.

O.C.G.A. § 42-5-36(d)(2). The Act defines "identifying information" to include "any records or information that reveals a name, residential or business address, residential or business telephone number, day and month of birth, social security number, or professional qualifications" of a person or entity that "manufactures, supplies, [or] compounds" lethal injection drugs. *Id.* § 42-5-36(d)(1). It classifies such information as "a confidential state secret." *Id.* § 42-5-36(d)(2).

Georgia passed the Lethal Injection Secrecy Act in response to the concerted effort by death penalty opponents to make lethal injection drugs unavailable for use in American executions. *See Owens v. Hill*, 295 Ga. 302, 317 (2014) ("[W]ithout the confidentiality offered to execution participants by the statute, as the record and our case law show, there is a significant risk that persons and entities necessary to the execution would become unwilling to participate."); *see also Glossip*, 135 S. Ct. at 2733–34 (describing the advocacy of death penalty

11

opponents that led to the removal of sodium thiopental from the market and a shortage of pentobarbital for use in American executions).  As the Supreme Court explained in *Glossip*, use of the barbiturates sodium thiopental and/or pentobarbital as the first (and frequently only) drug in a lethal injection protocol "enabled [s]tates to carry out the death penalty in a quick and painless fashion" for several years.  *Glossip*, 135 S. Ct. at 2733.  "But a practical obstacle soon emerged, as anti-death-penalty advocates pressured pharmaceutical companies to refuse to supply the drugs used to carry out death sentences."  *Id.*  The advocacy ultimately had its intended effect:  drug manufacturers were persuaded to withdraw sodium thiopental from the market entirely and to stop selling pentobarbital for use in executions.  *Id.*  Thereafter, it became difficult—if not impossible—for states to acquire either drug and thus increasingly necessary to substitute midazolam as the first drug in a three-drug series, as Mississippi has done in the protocol challenged by Plaintiffs in their underlying § 1983 action.  *Id.* at 2734 ("Unable to acquire either sodium thiopental or pentobarbital, some States have turned to midazolam[.]").

In spite of the developments described above, Georgia has been able to secure a source of pentobarbital in its compounded form for use in executions.  *See Gissendaner v. Comm'r*, *Ga. Dep't of Corr.*, 779 F.3d 1275, 1278 (11th Cir. 2015) ("Gissendaner I")  (noting that Georgia's most recent lethal injection protocol calls

for "an initial 2.5 gram does of pentobarbital" followed by "a second 2.5 gram dose of pentobarbital"). But Georgia's supply of pentobarbital—even in its compounded form—would be jeopardized were it not for the confidentiality provided by the Lethal Injection Secrecy Act. *See Owens*, 295 Ga. at 317 (citing a case in which a compounding pharmacy "was demanding the return of the execution drugs that it had supplied to the State of Texas because it was being harassed" (internal quotation marks omitted)); *see also Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 803 F.3d 565, 569 (11th Cir. 2015) ("Gissendaner II") ("To require . . . that Georgia open up about its source of pentobarbital would result in the drug becoming completely unavailable for use in executions, even though its use does not violate the Eighth Amendment."), *cert. denied sub nom.*, *Gissendaner v. Bryson*, 136 S. Ct. 26 (2015).

This Court has had numerous opportunities to consider the legality and the implications of the Lethal Injection Secrecy Act. *See* Gissendaner II; *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260 (11th Cir. 2014), *cert. denied sub nom.*, *Wellons v. Owens*, 134 S. Ct. 2838 (2014); *Terrell v. Bryson*, 807 F.3d 1276 (11th Cir. 2015); *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288 (11th Cir. 2016). In these cases, the Court has upheld the constitutionality of the Lethal Injection Secrecy Act, recognized that the confidentiality provided by the Act is necessary to protect Georgia's source of pentobarbital for use in executions, and

13

concluded that a condemned inmate has no right to the disclosure of information made confidential by the Act, including information that would identify the supplier or source of the drugs to be used in the inmate's execution. *See Jones*, 811 F.3d at 1292–93 (reviewing this Court's case law applying the Lethal Injection Secrecy Act).

By its plain terms, the Lethal Injection Secrecy Act bars disclosure of the vast majority of information sought in the subpoena Plaintiffs served on the GDC. For example, the subpoena demands that the GDC produce documents concerning: (1) the GDC's attempt to secure or purchase pentobarbital for use in executions, (2) drug labels and package inserts for any drug purchased by the GDC for use in lethal injection executions, (3) the process by which the GDC decided to use a single lethal dose of barbiturate in its lethal injection protocol, including communications between any GDC officer and any other person, corporation, or entity related to that process, (4) the GDC's use of compounded pentobarbital in executions, including communications between the GDC and any other person or entity (including pharmaceutical companies, pharmacies, and other corrections departments) related to the compounding of pentobarbital, (5) any GDC employee trainings on conducting lethal injections, including the names and qualifications of the person who taught at the training, and (6) communications between the GDC and any other corrections department or attorney general's office related to the

selection, purchase, or exchange of drugs for use in lethal injections.  Responding to any of these demands would require disclosure of the identity of people and entities that manufacture or supply drugs used in Georgia executions, and that otherwise participate in Georgia executions, in violation of the Lethal Injection Secrecy Act as interpreted by this Court in the numerous cases cited above.

Plaintiffs argue that their case is distinguishable from this Court's precedent applying the Lethal Injection Secrecy Act because none of the Court's prior cases involved a condemned inmate's attempt to secure information via subpoena.  In our view, this distinction is immaterial.  The essential principle underlying this Court's precedent is that the Lethal Injection Secrecy Act is a legitimate and constitutional attempt by the state of Georgia to maintain the confidentiality of the people and entities—including drug manufacturers and suppliers—that participate in executions in Georgia.  *See Jones*, 811 F.3d at 1292–93 (reaffirming this Court's precedent establishing that a condemned inmate has no right to require disclosure of information protected by the Lethal Injection Secrecy Act).  In spite of the slightly different context in which this case arises, that principle applies with equal force here.

Plaintiffs also argue that the GDC subpoena included some information that was not covered by the Lethal Injection Secrecy Act, and that the district court thus abused its discretion by ordering the subpoena to be quashed in its entirety.

15

According to Plaintiffs, the district court should at the very least have required the GDC to submit a privilege log. *See* Fed. R. Civ. P. 45(e)(2)(A)(ii) (requiring a person withholding subpoenaed information under a claim of privilege to "describe the nature of withheld documents [or] communications").

Again, we are unpersuaded. The purpose of requiring a privilege log is to "enable the parties to assess [a] claim" of privilege. *Id.* Here, it is apparent from the face of the subpoena that the vast majority of the information sought in the subpoena falls within the plain language of the Lethal Injection Secrecy Act. More importantly, the information with the most relevance to Plaintiffs' § 1983 claims— that is, information identifying Georgia's source of pentobarbital, which could show that pentobarbital is a known and available alternative to Mississippi's three-drug protocol, as required for Plaintiffs to prevail under *Glossip*—is directly barred from disclosure by the Act. The remainder of the information sought is either readily available to the public (for example, Georgia's lethal injection protocols from 2010 to the present) or of limited relevance to Plaintiffs' burden under *Glossip* to point to a known and available alternative to Mississippi's three-drug protocol (for example, documents related to the process by which Georgia determined that it would or would not use midazolam in its executions). Thus, the district court did not abuse its discretion by quashing the subpoena in its entirety, and without first requiring the GDC to submit a privilege log.

16

## <u>CONCLUSION</u>

For the foregoing reasons, we conclude that the district court did not apply an incorrect legal standard or commit a clear error of judgment in accepting and adopting the Magistrate Judge's ruling and granting the GDC's motion to quash. Accordingly, we **AFFIRM** the district court's order granting the GDC's motion to quash.